ILLINOIS CENT. R. CO. *v.* RAMSAY.

(Division B.    April 14, 1930.)

[127 So. 725.    No. 28594.]

May, Sanders, McLaurin & Byrd, of Jackson, and **Chas. N. Burch,** of Memphis, Tenn., for appellant.

**J. F. Dean,** of Senatobia, for appellee.

Argued orally by **J. L. Byrd,** for appellant, and by **J. F. Dean,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Tate county to recover actual and puni-

tive damages for the negligence of appellant in carrying her beyond Senatobia in this state, her destination, while she was traveling on a through ticket from New York City, by way of Detroit and Chicago. There was a verdict and judgment for one dollar and fifty cents actual damages, and two hundred dollars punitive damages, and from that judgment appellant prosecutes this appeal.

The only question in the case is whether the court erred in submitting to the jury the question of punitive damages. Appellant admits liability to the appellee for the actual damages suffered by her because of being carried beyond her destination, but denies liability for punitive damages.

Appellee purchased a ticket for herself and her grandson, Dick Thomas, from New York City to Senatobia, by way of Detroit, Chicago, and Memphis; she and her grandson making the trip together. From Chicago south they traveled on what is known as appellant's fast train No. 3, which was due at Senatobia at ten-eighteen A. M. Senatobia is not a regular stop for this train, but it does stop there for all passengers from the north going through Memphis to points south of that city. Appellant admits that appellee and her grandson were entitled to have the train on which they were traveling stop at Senatobia. Sardis is fourteen miles south of Senatobia, on appellant's Memphis-New Orleans line, on which appellee and her grandson were traveling. The distance from Memphis to Senatobia is fifty miles; the time of appellant's train No. 3 between Memphis and Senatobia is an hour and ten minutes, and twenty minutes between Senatobia and Sardis.

On the trial appellee and her grandson testified that they both realized, before they reached Senatobia, that their train was not going to stop at that place, and at the public gin, something like four or five hundred yards north of the station, the grandson rang for the Pullman porter, who promptly responded; that they notified the pullman porter that they held tickets for Senatobia; that

the Pullman porter at once went forward and notified the conductor of that fact, and returning reported to appellee that the conductor would soon be in; that this all occurred before the train reached College street, which is north of the station; that the conductor at the time was taking up the tickets of the passengers, and leisurely worked his way to where appellee and her grandson occupied seats in the Pullman, but that the train still had not passed the station when the conductor reached them; that appellee demanded of the conductor that he stop the train and let her off at Senatobia, but he declined to do so, and carried her and her grandson on to Sardis, where they disembarked, and later in the day returned to Senatobia. The actual damages suffered by appellee were shown to be only one dollar and fifty cents.

The evidence of appellee and her grandson was contradicted by appellant's conductor in charge of the train and by the Pullman conductor. Their evidence was to the effect that, when the Pullman porter notified the conductor that appellee and her grandson held tickets from New York to Senatobia, the train had already passed the station at the latter place.

The evidence of witnesses introduced by appellant on the trial showed without conflict that appellant had no method or system by means of which to ascertain whether there were passengers on its trains No. 3 for Senatobia from points north of Memphis, except as the conductor acquired such knowledge in taking up tickets as he worked the train out of Memphis south. Mr. Sitton was appellant's conductor in charge of the train on which appellee and her grandson were traveling. He testified that he did not know that Mrs. Ramsey and her grandson were on the train until it had passed the station at Senatobia; that on leaving Memphis he began taking up the tickets of the passengers, as he always did, in the front car, which is the negro car, and worked his way back through the entire train, including, of course, the Pullman cars; that his train often passed Senatobia, and

sometimes Sardis, while he was so engaged. He testified that no other method was adopted to discover whether there were passengers on his train holding tickets for Senatobia. He stated, on cross-examination, that the conductor who turned train No. 3 over to him at Memphis made no report, and was required to make none, as to whether there were passengers south holding tickets for Senatobia.

"To authorize the infliction of punitive damages, the wrongful act complained of must either be intentional, or result from such gross disregard of the rights of the complaining party as amounts to willfulness on the part of the wrongdoer. Chicago, St. L. & N. O. R. R. Co. v. Scurr, 59 Miss. 456, 42 Am. Rep. 373; Mississippi & T. R. R. Co. v. Gill, 66 Miss. 39, 5 So. 393; New Orleans & N. E. R. R. Co. v. Martin, 140 Miss. 410, 105 So. 864.

We are of opinion that there was sufficient evidence in this case to bring it within those principles. The evidence on behalf of appellee tended to show that appellant's conductor had sufficient notice of the fact that he had passengers for Senatobia to enable him to stop his train at the station, and, in gross disregard of such notice, permitted the train to pass the station without stopping. In considering this question, we cannot lose sight of the fact that appellant had adopted no system to ascertain whether its train No. 3 carried passengers from points north of Memphis to Senatobia, except as this knowledge was acquired by the conductor in charge of the train, in taking up the tickets of the passengers, which, as the evidence showed, might not be completed until the train had passed Senatobia, and sometimes not until it had passed Sardis, fourteen miles south of Senatobia. This fact, standing alone, if it did not show a gross disregard on the part of appellant of the rights of such passengers, did not fall far short of it. Certainly this fact added to the other evidence in the case given by appellee and her grandson, was sufficient to put the question of punitive damages to the jury.

Affirmed.