BRADLEY *v.* ASSOCIATES DISCOUNT CORPORATION

No. 40392          February 11, 1957          92 So. 2d 468

*Donald W. Cumbest,* Pascagoula, for appellant.

*John D. Gautier,* Pascagoula, for appellee.

KYLE, J.

The appellant W. R. Bradley, as plaintiff, recovered a judgment in the Circuit Court of Jackson County against the appellee, Associates Discount Corporation, defendant, for the sum of $454.23, in an action for damages for an alleged wrongful trespass committed by the defendant in repossessing a 1952 model Studebaker automobile, which the plaintiff had purchased from St. Louis Motor Company, Incorporated, in Mobile, Alabama. The plaintiff filed a motion for a new trial on the ground that the court had erred in granting to the defendant an instruction that the jury could not award punitive damages. The court everruled the motion for a new trial; and entered a judgment for the plaintiff for the above stated amount. From that judgment the plaintiff has prosecuted this appeal.

The record shows that the appellant purchased the 1952 model Studebaker automobile from St. Louis Motor Company, Incorporated, on February 20, 1954, under a conditional sales contract. The conditional sales contract was in due course assigned to the appellee, Associates Discount Corporation. Thereafter, on or about April 7, 1955, the appellee, acting by and through its duly authorized agent, repossessed the automobile because of the appellant's default in the payment of the monthly installment of the purchase price which became due during the month of March. The automobile at the time it was repossessed was parked on a lot in the Town of Moss Point, which was owned by Willie Williams, a brother of Alfred Williams, an automobile mechanic, in

whose custody the automobile had been left to be repaired.

The appellant alleged in his amended declaration: (1) That the automobile had been taken by the appellee's agent from the Willie Williams' lot, where the appellant had left it to be repaired, without the appellant's permission, and that the appellee's agent, who repossessed the automobile, had committed a deliberate fraud by falsely representing to Alfred Williams that the appellant's lawyer had advised him that the appellant was bankrupt and could not pay for the car; and (2) that there were several articles of personal property in the automobile at the time it was repossessed, and that said personal property was taken by the appellee's agent and was never returned to the appellant. The plaintiff asked for actual and punitive damages in the sum of $2500.

The appellant's attorney argues on this appeal that the evidence fully substantiated the allegations of the declaration, and that the court erred in refusing to allow the jury to award punitive damages, in addition to the actual damages. It is therefore necessary that we give a brief summary of the testimony.

The appellant testified that he had purchased the automobile on February 20, 1954, from the St. Louis Motor Company, Incorporated, and that the total price to be paid for the automobile was $1,543.60; that the sum of $400 was paid in cash; and that the monthly payments to be made thereafter were $47.65. The appellant stated that he had taken the car to Alfred Williams during the latter part of March 1955 for repairs; that Alfred had a small garage on Willie Williams' residence lot where he repaired automobiles; and that the agreement was that Alfred was to repair the car and when the appellant got his insurance money from the Paper Mill he was to pay Alfred for the repairs. The appellant stated that when the agent of the Discount Corporation came and got the car he was behind on one of his notes seven-

teen days. He stated that the first information he had
about the car being repossessed came from his thirteen-
year old daughter. After being informed that his car
had been taken away, he went to see Alfred Williams
about the matter. Alfred told him that the agent of the
Discount Corporation had come and picked up the car,
and that the agent had told him that the appellant's
lawyer had said that the appellant was bankrupt. The
appellant stated that he had paid about a thousand dol-
lars on the car, and that at the time it was repossessed
he had a rod and reel and fishing tackle and a new side-
wall tire in the car, and also all of his tools and papers,
and that the Discount Corporation had not offered to
return the property to him.

Bruce Crutchfield, the appellee's claim adjuster, who
repossessed the car for the appellee, testifying as an
adverse witness for the appellant, stated that he drove to
Moss Point on April 7, 1955, for the purpose of repos-
sessing the automobile which the appellant had pur-
chased from the St. Louis Motor Company; that he went
to the boarding house where the appellant was staying,
and made inquiry about the appellant; and that the
waitress whom he talked to told him that she did not
know where the appellant was, but his daughter was
there at the house; that he then talked to the appellant's
daughter, and asked her where her daddy was, and she
said that she thought he was working. Crutchfield stated
that he then asked the child where the automobile was,
and she told him that it was over in the garage. The
child did not know when her daddy would be home.
Crutchfield stated that he then went around to the place
where Williams worked on cars and talked to Wil-
liams. Williams told him that the appellant had left the
car with him to be repaired; that the car had been there
on the yard two or three weeks; but nothing had been
done about it. Crutchfield then told Williams that the
appellant's account was delinquent, and he would have to

take the car back to Mobile and store it. Williams told him that would be all right, he would be glad to get rid of it. Williams told Crutchfield that he had some stuff in the back of the car that he would like to get out, and that he had a tire back there that belonged to him, and Crutchfield let him have it. Williams then helped Crutchfield push the car out of the driveway. Crutchfield stated that he and James Anderson, who came with him from Mobile to get the car, then drove back to the rooming house where the appellant was living, and waited there 40 or 50 minutes to see the appellant, but the appellant did not show up, and that he and Anderson then took the car back to Mobile.

On cross-examination Crutchfield stated that there was a rod and reel in the car, and a pair of pliers and two wrenches, but no fishing tackle. He stated that the appellant had had the car 13 months, and that he had been a "constant collection problem". Crutchfield stated that the appellant owed $573.66 on the car. After deducting the unearned interest and insurance, the amount of the indebtedness was $411.77. Crutchfield denied that he had told Alfred Williams that the appellant's attorney had said that the appellant was bankrupt. Crutchfield produced a package of tools that had been taken from the car—a pair of pliers, a screwdriver and two wrenches, which were all the tools that had been taken out of the car to the best of his knowledge, and offered them to the appellant.

Alfred Williams testified that Crutchfiled came to see him on April 7, 1955, and told him that he had come to repossess the car. Alfred asked him whether he had seen the appellant. Crutchfiled told him that he had not seen the appellant, but that he had talked to his daughter. Crutchfiled also said that the appellant's lawyer had notified them that "Robert was bankrupt," and that that was one reason that he had come after the car. Alfred stated that he let Crutchfield have the car. "After

he said that Robert was bankrupt, I figured he wasn't going any further with it." Alfred stated that the appellant had a load of stuff packed in the car; that he had seen a couple of tires and a reel and rod and a lot of wrenches scattered around on the floor; and there was one white wall tire which he supposed belonged to the appellant. Alfred denied that he had taken the white wall tire out of the trunk of the car. On cross-examination Alfred was asked what he thought Crutchfield meant when said that the appellant's lawyer had notified them that "Robert was bankrupt," and Alfred's answer was, "Well, I just figured Robert had decided to give up the car rather than put a new motor in. If he was bankrupt I figured he wasn't going to pay for it." On cross-examination Alfred stated that he did not see the tire at the time the Discount Corporation's agent repossessed the car. He saw "nothing then but the reel and rod in the back."

James Anderson, who was with Crutchfield at the time Crutchfield repossessed the car, corroborated Crutchfield's statement that Alfred Williams took the tire out of the trunk of the automobile. He thought it was a white wall tire. Anderson also testified that after Crutchfield had picked up the car, he went back to the colored restaurant where the appellant was supposed to be living, and waited there 35 or 40 minutes for the appellant, but the appellant "never did show up."

The appellant's attorney argues that the evidence on behalf of the appellant showed that the appellee's agent used trickery and chicanery and made false representations to Alfred Williams, in order to obtain possession of the automobile; and that the court erred in refusing to submit to the jury the question of punitive damages.

But we think there is no substantial evidence in the record to show that Crutchfield used trickery or chicanery, or made false representations, to obtain possession

of the automobile; and there was no error in the court's refusal to submit to the jury the question of punitive damages.

In the case of Vicksburg Railroad, Power & Mfg. Co. v. Marlett, 78 Miss. 872, 29 So. 62, the Court said: "It has been held in this state that punitive damages may be recovered only in cases where the acts complained of are characterized by malice, fraud, oppression or wilful wrong evincing a disregard of the rights of others. There must be some element of one or more of the qualities or properties named, relating to the acts made the ground of action, before exemplary damages can be inflicted." The rule thus stated was reaffirmed in the case of Cumberland Tel. & Tel. Co. v. Baker, 85 Miss. 486, 37 So. 1012, and in the case of Cumberland Tel. & Tel. Co. v. Allen, 89 Miss. 832, 42 So. 666.

The appellant cites in support of his contention that he was entitled to have the issue of punitive damages submitted to the jury the case of Sanders v. General Motors Acceptance Corporation (S. C. 1936), 185 S. E. 180. But the facts in that case, upon which a jury might base a finding of "fraud, oppression, or wilful wrong, evincing a disregard of the rights of others", were much stronger than the facts in the case that we have here. The agent of the Acceptance Corporation in that case testified that he made no effort to locate the plaintiff because his superiors had instructed him to take the car any way he could; and that when he entered the automobile he "got a quick glance at the car and * * * made for the State of Georgia as quick as he could". The Court held in that case that there was sufficient evidence for the jury to conclude, as it did, that the defendant acted wilfully, and in a highhanded oppressive manner, and in wanton disregard of the property rights of the plaintiff.

This case is entirely unlike the case of Commercial Credit Company v. Spence, 185 Miss. 293, 184 So. 439, in

which the court affirmed an award of punitive damages. The agent of the Commercial Credit Company in that case took the appellee's car while it was parked in front of the hotel, while the appellee's wife was in the hotel and had the keys to the car, and the taking was accomplished by the appellant's agent breaking out one of the windows, and thereby obtaining access to the inside of the car. The Court in affirming the award of punitive damages in that case said that under the contract the right to take the property from the possession of the other party did not justify the use of force to take it.

It is not claimed that force was used to obtain possession of the automobile in this case; and we think the evidence was insufficient to show "malice, fraud, oppression or wilful wrong", such as would justify an award of punitive damages.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie,* JJ., concur.