195 So.2d 515 (1967)
J.O. BERRY et al.
v.
G.M. HOUSTON et al.
No. 44266.
Supreme Court of Mississippi.
February 20, 1967.
*516 J.W. Kellum, Sumner, for appellants.
Carlton & Henderson, Sumner, Barnett, Montgomery, McClintock & Cunningham, Jackson, for appellees.
SMITH, Justice.
The Webb-Sumner Methodist Church, acting through its trustees, filed a bill in the Chancery Court of the Second Judicial District of Tallahatchie County against J.O. Berry and Mrs. Colie T. Ellett, seeking cancellation of claims asserted by them to parts of real estate, in the town of Webb, of which the church was the record owner.
Berry and Ellett answered separately, respectively asserting claims of ownership of parts of the church property, which it was alleged had been acquired by adverse possession.
The case was heard by the chancellor upon the pleadings and proof, and, at the conclusion of the trial he entered a decree cancelling the claim of Berry as a cloud upon the church's title, upon the grounds that Berry, who had no color of title, had not met the burden, which rested upon him, of establishing that his possession had been exclusive, nor that his possession of any specific part of the land had been continuous, for as long as ten years. Moreover, although the decision was not based upon this point, the chancellor found that it had not been clearly established that Berry's occupancy or use of the land had been other than with permission of the church authorities.
On the other hand, the court declined to cancel Mrs. Ellett's claim of ownership of a 50 foot by 50 foot lot at the southeast corner of the church property, based upon adverse possession for more than 10 years.
Berry has appealed from that part of the decree cancelling his claim, and the church has appealed from that part declining to cancel, as a cloud upon its title, the claim of Mrs. Ellett.
In Page v. O'Neal, 207 Miss. 350, 42 So.2d 391 (1949), the Court said:
"* * * Appellant, however, has no color of title, and his title by adverse possession, if any, runs only to such part of the land as was actually held by him in possession or enclosed or otherwise actually and continuously occupied by him for the statutory period of ten years. * * *
* * * * * *
"The burden of proof was on appellant to establish by competent evidence, in the lower court, what particular area was so used, cultivated, fenced, or actually occupied by him and where such areas were located on the tract, and to do this in such a way as to enable the court to determine its location and in its decree establish the area to which title has ripened by adverse possession. Evans et al. v. Shows et al., 180 Miss. 518, 177 So. 786. Here, there was a total failure of such proof and there is nothing in this record upon which the court below could locate the areas and describe them in its decree, even if the proof of adverse possession had been otherwise sufficient." 207 Miss. at 355, 356, 42 So.2d at 392.
The chancellor correctly held that Berry failed to meet the burden of proving *517 his claim, and the decree, as to Berry, must be affirmed.
On behalf of the church it is urged that the Ellett claim must also fail under the rules laid down in Page v. O'Neal, supra, and Evans v. Shows, 180 Miss. 518, 177 So. 786 (1938).
In each of those cases, the court rejected a claim of ownership, based wholly upon adverse possession, upon the ground that the claimant, who had no color of title to any specific area, could acquire title in that manner only to the specific land to which the actual adverse occupancy had extended, and, there having been established no definite location or sufficient description of the area actually occupied, the claim failed.
The cited cases each involved an assertion of ownership of an area forming a part of a larger tract, based wholly upon a claim of actual adverse occupancy. In neither was there color of title in the claimant, nor was the specific property, title to which it was claimed had been acquired by adverse possession, described, or definitely located in relation to any known monument or established subdivision or plat, or any other thing from which a sufficient description might have been projected with certainty. The Court applied the rule that, in such a situation, title by adverse possession is limited to the area actually occupied adversely. The area thus occupied, not having been enclosed nor its boundaries otherwise visibly marked, not having been definitely located, and there having been no sufficient description of the limits of the land actually occupied, the claim failed.
A fundamental purpose of a suit by a landowner, such as that brought by the church in the present case, is to establish the marketability of his title, that is, to have removed from it judicially all "doubts, clouds, and suspicions."
Here, Mrs. Ellett testified that she, as sole heir and successor in possession to her intestate mother, and before her, her mother, had been in the actual adverse possession and occupancy of the tract in question (which they used as a garden and which was located at the southeast corner of the church property) for some twenty years or more. This possession was claimed to have been begun by her father, who was said to have used the property for a blacksmith shop. She testified that, after the shop was torn down, she and her mother, and after her mother's death, she alone, openly and exclusively occupied and used the site as a garden, claiming to own it, and that its corners had been marked with heavy timbers, with fencing in between on the west, north and east sides, the south boundary having been a public alley. In her pleadings, Mrs. Ellett described the garden as a lot 50 feet by 50 feet in the southeast corner of the property described in the church deed. In her testimony, she expanded its dimensions to 75 feet.
The chancellor, however, after viewing the property, found that "this garden is not more than 50 feet square, and a portion of it actually lies upon the property to which Mrs. Ellett has record title, lying to the east of the tract in controversy."
Although the burden rested upon Mrs. Ellett to establish, with reasonable certainty, the exact property which was the subject of claim of ownership, we are unable to say that she so far failed to meet this burden that the chancellor was manifestly wrong in his factual finding that Mrs. Ellett and her mother had occupied, exclusively and adversely, under claim of ownership, for a continuous and uninterrupted period of ten years, the specific lot enclosed within the garden fences and alley.
This case differs in that particular from Evans v. Shows and Page v. O'Neal, supra. Here, the extent of the adverse occupancy was delineated and visibly proclaimed by the erection of four corner markers, of a certain permanency, connected by fences on three sides and marked by a public alley on the south.
*518 The chancellor upheld Mrs. Ellett's claim to this lot, and in the decree sought to exclude it from a general cancellation of all claims to the remainder of the church property, using this language:
"EXCEPT as to a parcel in the Southeasterly corner thereof now enclosed by a fence, provided, however, that in no event shall said parcel exceed fifty (50) feet by fifty (50) feet in said Southeasterly corner (and in the event any of the dimensions of said excepted parcel, as determined by the fences there now located, be in excess of fifty (50) feet, the fence lengths shall be reduced to fifty (50) feet, and in the event any of said dimensions as evidenced by the present fences are less than fifty (50) feet, the dimensions are expressly limited to the dimensions established by such fences);"
On the record before us, the church was entitled to have removed from its title all doubts, clouds or suspicions of every kind, as to every part of the land included within the calls of the description in its deed, except as to that portion, title to which the chancellor found had been acquired by Mrs. Ellett by adverse possession.
In the present state of the record, there is a serious question both as to the location and description of that part of the Ellett exception, which encroached upon the church property, and the result is that the marketability of the church property remains seriously impaired.
Mrs. Ellett's testimony affords sufficient support for the chancellor's finding that she and her mother had been in the adverse possession of the enclosed garden lot for more than ten years. This finding, however, affords no certain description of the lot proposed to be excepted from the church property and his finding that a "portion of it actually lies upon the property to which Mrs. Ellett has record title, lying to the east of the tract in controversy," renders more uncertain the extent to which the enclosed garden plot encroaches upon the property described in the church deed. The church is entitled to have the situation clarified of record, and for that purpose to have a decree specifying the exact extent to which the Ellett garden lot encroaches upon the original tract conveyed to it, with a definite description of the encroachment adequate to meet the standards of specificity required in deeds of conveyance.
The acquisition of title by adverse possession, as that phrase is used in real property law, contemplates a special kind of possession. It is the intendment of the law that title to real property belonging to another may never be acquired by mere possession, however long continued, which is surreptitious or secret, or which is not such as will give unmistakable notice of the nature of the occupant's claim. Such occupancy must not only be adverse, hostile, and exclusive as to others, but it must also be peaceful, uninterrupted, and continuous, under claim of ownership. In addition, the occupancy, under claim of ownership, must be actual, open, notorious, and visible. The corner posts, fences, and alley were sufficient to satisfy these latter requirements in this case, and, under the testimony in the record, warranted the chancellor in finding that the adverse occupancy of Mrs. Ellett and her mother had extended to the marked boundaries of the garden plot for the statutory period.
There was evidence identifying beyond question the specific garden lot occupied by Mrs. Ellett, and establishing its marked corners and boundaries. This was sufficient information in evidence to afford a firm basis for an accurate survey and description of that portion of the garden lot which encroached upon and is to be excepted from the church property, and to bring it within the rule, "that is certain which can be made certain." Jones v. Hickson, 204 Miss. 373, 37 So.2d 625 (1948).
*519 As to the claim of Mrs. Ellett, the decree is reversed and remanded for the purpose of ascertainment, by survey or otherwise, of an accurate description of that part of the Ellett garden that is to be excepted from the church property described in its deed.
Affirmed as to J.O. Berry; reversed and remanded as to Mrs. Colie T. Ellett for further proceedings in accordance with this opinion.
GILLESPIE, P.J., and RODGERS, PATTERSON, and ROBERTSON, JJ., concur.