317 So.2d 892 (1975)
E.E. WOODALL
v.
Ester Eugene ROSS and Albert Edwards.
No. 48236.
Supreme Court of Mississippi.
August 25, 1975.
Rehearing Denied September 15, 1975.
Felts, Russell & Adams, Edward A. Lueckenbach, Greenville, for appellant.
Robertshaw, Merideth & Swank, Randolph Noble, Jr., Greenville, John Paul Moore, Starkville, for appellees.
Before RODGERS, SMITH and WALKER, JJ.
*893 WALKER, Justice.
This is an appeal and cross-appeal from a judgment of the Circuit Court of Washington County, Mississippi, in favor of appellees for damages sustained as a result of appellant's cutting all the timber from lands belonging to the appellees.
The jury returned a verdict in favor of appellees in the amount of $1,690 actual damages and $2,000 punitive damages against the appellant Woodall. The trial court reduced the verdict as to actual damages from $1,690 to $1,462.50 (the appellee does not contend that this was error), and set aside the $2,000 verdict representing punitive damages and entered judgment for the appellees in the amount of $1,462.50.
*894 The appellant's defense in the lower court was that he had acquired title to the 13-acre tract of land in question by adverse possession; and that is the primary question presented on his direct appeal.
The appellees' cross-appeal is from the court's action in setting aside the jury's verdict of $2,000 in punitive damages.
In asserting his claim of adverse possession, appellant relies heavily on Broadus v. Hickman, 210 Miss. 885, 50 So.2d 717 (1951), which involved the two-year statute of limitation, Mississippi Code Annotated section 15-1-17 (1972), and possession under color of a tax patent and what the Court termed as "wild lands." The Court there said:
This Court has held that the necessary facts to acquire title by adverse possession and preclude recovery by another against such adverse claimant are the same under said Section 717, the two-year tax statute, as under Section 711, Code 1942, the ten year statute. Smith v. Myrick, 201 Miss. 647, 29 So.(2d) 924. Again, it is the rule that less notorious and obvious acts upon the land are essential to vest title in what are known as wild lands than lands suitable to occupancy by residing thereon and putting them to husbandry and farming. McCaughn v. Young, 85 Miss. 277, 37 So. 839, 842. The facts in no two cases are exactly the same. Each must stand upon its own facts; therefore, we deem it unnecessary to detail the various facts involved in the many cases in this State which have involved this question. We think the question solvable by testing the facts of this case by the rule laid down in the McCaughn case, supra. The rule was there stated in these words: "The true doctrine, and the one now generally recognized, is thus stated by Harris, J., in Ford v. Wilson, 35 Miss. 490, 72 Am. Dec. 137: `That neither actual occupation, cultivation, or residence are necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.' Worthley v. Burbanks, 146 Ind. 534, 45 N.E. 779; Hubbard v. Kiddo, 87 Ill. 578; 3 Washburn on Real Property, § 1965. `It is not necessary that the occupation should be such that a mere stranger passing the land would know that some one was asserting title to a dominion over it. It is not necessary that the land be cleared or fenced, or that any building be put upon it. The possession of land cannot be more than the exercise of Limitations, § 267." (210 Miss. at 892-893, 50 So.2d at 719-720).
The Court then enumerated the many acts of ownership exercised by Broadus over that property, saying:
Here he took possession; went upon the property; paid taxes for five years; gave a turpentine lease, under which visible acts upon the trees were performed by the lessee; from year to year burned fire guards; had the property surveyed, the corners established and marked, grazed [sic-blazed] some trees along the survey; transplanted many trees; did other acts as above enumerated, [had the land assessed to themselves and put stakes at the corners of the property] and actually paid out to others in taxes and in improving and protecting the property, not counting his own time and labor, $233.64. (210 Miss. at 893, 50 So.2d at 720).
The Court went on to say:
The land could not be profitably cultivated, nor was it good pasture land, or suitable for occupancy as a residence much of it being swampy and low. It was by nature best adapted to the use to which Broadus put it, i.e., reforestation. It is evident, too, that any person of ordinary observation, going upon and inspecting *895 the land as a prospective purchaser, would have noticed signs of ownership being exercised thereover. (210 Miss. at 893, 50 So.2d at 720).
Even if we were to assume arguendo that the subject lands were "wild lands" as in the Broadus case, which they were not, the few meager acts of ownership relied upon by appellant did not ripen into a legal title. At most, appellant made some repairs to an existing fence which bordered the 13-acre tract on three sides; that his cattle and horses grazed onto the Edwards' property through the open end which abutted the appellant's property; and, that he cut some firewood from the property during two winters when he had a wood heater.
It is significant to note that during all of the years that appellant contends he was claiming the 13-acre tract of land, he did not have it surveyed and marked although he had his own land surveyed; and, that he did not attempt to have it assessed in his name or pay the taxes on it as did the Broaduses. Furthermore, he never told Mr. Edwards, whom he rode back and forth with to work for a long period of time, that he was claiming the property as his own. Also, during the period in which the appellant contends that he was exercising public acts of ownership over the property, the land was assessed to the appellees who continued to pay the taxes. They also paid off a mortgage on this property, which they had put in the Federal Soil Bank Program for ten years. Mrs. Edwards testified that during the period of time in question, she drove past the property many times and never saw anything that caused her to suspect that the appellant was claiming it, until she was notified that the land had been cleared in 1971.
In Berry v. Houston, 195 So.2d 515 (Miss. 1967), Justice Smith, speaking for the Court, said:
The acquisition of title by adverse possession, as that phrase is used in real property law, contemplates a special kind of possession. It is the intendment of the law that title to real property belonging to another may never be acquired by mere possession, however long continued, which is surreptitious or secret, or which is not such as will give unmistakable notice of the nature of the occupant's claim. Such occupancy must not only be adverse, hostile, and exclusive as to others, but it must also be peaceful, uninterrupted, and continuous, under claim of ownership. In addition, the occupancy, under claim of ownership, must be actual, open, notorious, and visible. (195 So.2d at 518).
It is readily apparent from a reading of this record that the appellant's claim to ownership of the appellees' 13-acre tract of land is of recent origin and that the jury was eminently correct in rejecting his claim of title by adverse possession.
We have considered the remaining assignments of error on direct appeal and find them to be without merit.

ON CROSS-APPEAL
The appellees contend on cross-appeal that the trial court erred in ordering a remittitur of punitive damages in the amount of $2,000 and ask that this Court reinstate the award.
In Illinois Central Railroad Company v. Ramsay, 157 Miss. 83, 127 So. 725 (1930), this Court said:
To authorize the infliction of punitive damages, the wrongful act complained of must either be intentional, or result from such gross disregard of the rights of the complaining party as amounts to willfulness on the part of the wrongdoer. (157 Miss. at 87, 127 So. at 726).
In Snowden v. Osborne, 269 So.2d 858 (Miss. 1972), this Court held:
Exemplary or punitive damages are those, of course, which are in addition to the actual or compensatory settlement. They are granted in the nature of punishment for the wrongdoing of the defendant *896 and as an example so that others may be deterred from the commission of similar offenses thereby in theory protecting the public. (269 So.2d at 860).
It is a long settled and uniformly adhered to rule in our jurisprudence that the amount of such punitive or exemplary damages is solely within the discretion of the jury, and, no matter what the sum of their finding might be, interference therewith, unless for exceptional causes, is discouraged. The reason being that, as the jury is the sole judge of the amount which ought properly to be assessed in order to inflict adequate punishment, the courts should scrupulously avoid any undue interference with their prerogative. Sandifer Oil Co., Inc. v. Dew, 220 Miss. 609, 71 So.2d 752 (1954); Yazoo & Mississippi Valley Railroad Co. v. Williams, 87 Miss. 344, 39 So. 489 (1905).
The Court has repeatedly stated the rule of law that punitive damages may be recovered where there is malice, fraud, oppression, willful wrong or gross negligence. See Greyhound Corp. v. Townsend, 234 Miss. 839, 108 So.2d 208 (1959); Bradley v. Associates Discount Corp., 230 Miss. 131, 92 So.2d 468 (1957); Bounds v. Watts, 159 Miss. 307, 131 So. 804 (1931); Yazoo & Miss. Valley Railroad Co. v. Mullen, 158 Miss. 774, 131 So. 101 (1930); Illinois Central Railroad Co. v. Ramsay, 157 Miss. 83, 127 So. 725 (1930).
The appellant, cross-appellee, contends that in the absence of having title by adverse possession, which we have held that he did not, that his trespass upon the land of the appellees was in good faith and the result of a bona fide mistake of fact in believing that the lands belonged to him.
In support of his contention that punitive damages should not be allowed, he cites 52 Am.Jur. Trespass section 59, page 881 (1944) [now 75 Am.Jur.2d Trespass section 61, page 54 (1974)] which reads, in part, as follows:
However, where a trespass is the result of a bona fide mistake of fact, the trespasser is not liable for multiple damages, both where the statute does, and where it does not, contain exculpatory provisions. And, although there appears to be an absence of uniformity in the decisions, where a trespass is committed in the erroneous but honest belief that legal authority to commit the act complained of exists, the wrongdoer appears not to be liable for multiple damages.
He also cites 87 C.J.S. Trespass § 112, p. 1069 (1954) which provides, in part, as follows:

Willful acts done in good faith. Exemplary damages will not usually be allowed where the trespass was under claim of right in good faith, as under claim of title to land, or under mistake as to ownership of personalty taken under process, ...
The appellant also contends that he not only acted in good faith but under the advice of counsel and cites 22 Am.Jur.2d Damages section 253, page 347 (1965) which says:
Exemplary damages are not recoverable against a defendant who acts in good faith and under the advice of counsel. But such damages are recoverable against him if he is actually in the wrong, although believing otherwise, and if, under advice of counsel, he acts in an oppressive or cruel manner.
However, there is no merit to appellant's contention that he acted as he did under advice of counsel. The record simply shows that he contacted an attorney prior to clearing some of his own land and appellees' 13-acre tract. The record is completely devoid of what information he gave the attorney or what advice the attorney gave him. Also, he made no attempt at the trial to call the attorney as a witness to substantiate his claim that he acted in good faith on advice of counsel. Moreover, it is clear from the record that the appellant *897 had ill feelings toward Mrs. Ross, one of the appellees and cross-appellants, because of a dispute over a property line involving other property on the north side of appellant's land. The appellant made the statement to two witnesses that he was going to take the 13-acre tract of land because Mrs. Ross had taken some of his land earlier.
We are of the opinion that the trial court erred in setting aside the $2,000 judgment for punitive damages. It is evident from the record that the appellant acted intentionally in a malicious and oppressive manner and not in good faith when he went onto appellees' property and bulldozed all of the trees therefrom.
Therefore for the reasons given above, this case is affirmed on direct appeal; reversed on cross-appeal; and, the judgment for punitive damages in the amount of $2,000 is reinstated.
Affirmed on direct appeal; reversed on cross-appeal; and judgment for $2,000 punitive damages reinstated.
GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, SUGG and BROOM, JJ., concur.