LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY AND FACTS
 

 ¶ 1. I.H. “Hardy” and Katherine Aber-crombie own a piece of property in Coving-ton County, Mississippi. In early 1998, Hardy noticed a pipe-and-cable fence on the southwest corner of the property. The Abercrombies did not know when the fence was put on the property, but they testified that they had never seen it before. On April 29, 2002, Harvey Saul of Saul Engineering surveyed the property and found an encroachment of 110.17 feet over the southeast 1/4 and southwest 1/4 section of the property and an encroachment of 21.03 feet over the south township line. Grayl-ing Carter and Tammy Graves Carter owned the adjacent property and had installed the pipe-and-cable fence.
 

 ¶2. On July 19, 2002, and August 29, 2002, the Abercrombies’ attorney sent letters to Grayling asking him to remove the fence. Grayling refused, and the Aber-crombies filed a complaint to quiet and
 
 *562
 
 confirm the title and remove cloud on the title. The Abercrombies also named Lawrence Trigg and Ester P. Trigg in the complaint, alleging that the Triggs also had a fence that was encroaching on the Abercrombies’ property. In addition, the Abercrombies asserted that the Triggs had thrown and pushed trash and debris onto them property. The Abercrombies asked the chancellor to order the Triggs to remove the debris.
 

 ¶ 3. The following defendants were named in the complaint because they were neighboring property owners: Stanley and Doris Parker and the heirs at law of Von-dee Walton — Hugo William Walton, Mary Mittlelee Walton McCall, Linda Ann Walton Smith, and Sandee Joyce Walton Hendricks.
 

 ¶ 4. The Triggs filed a cross-complaint asking the chancellor to quiet title. The Triggs alleged that they were the true owners of the property inside their fence line, and they further asserted that they had acquired the property by adverse possession. The Walton heirs also filed a cross/eounter-complaint, alleging to be the owners in fee simple of the property.
 

 ¶ 5. After a hearing was held, the chancellor first determined the cross-complaint for adverse possession was without merit. The chancellor accepted the survey of Jerry Miller, who found that a large post and a half-inch rebar marked the northeast corner of the northeast 1/4 of the property. The chancellor also accepted the survey of Forestry Services, Inc., which found that the existing fence properly marked the property line starting at the southwest corner of the property and running east between the properties.
 

 ¶ 6. Abercrombie now appeals, asserting the following issues: (1) the chancellor erred in failing to enter a default judgment in favor of the Parkers; (2) the chancellor failed to adjudicate the Abercrombies to be owners in fee simple of their property by adverse possession; (3) the chancellor should have accepted the survey of Saul Engineering as the true and accurate description of the property; and (4) the chancellor erred in admitting the survey conducted by Miller. Finding reversible error as to issue four, we decline to address the other issues as issue four is dispositive of this appeal.
 

 STANDARD OF REVIEW
 

 ¶ 7. When reviewing a chancellor’s findings, this Court employs a limited standard of review.
 
 Reddell v. Reddell,
 
 696 So.2d 287, 288 (Miss.1997) (citing
 
 Carrow v. Carrow,
 
 642 So.2d 901, 904 (Miss.1994)). The chancellor’s findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous, or applied an incorrect legal standard.
 
 Id.
 
 “The standard of review employed by this Court for review of a chancellor’s decision is abuse of discretion.”
 
 McNeil v. Hester,
 
 753 So.2d 1057, 1063 (¶ 21) (Miss.2000) (citations omitted).
 

 DISCUSSION
 

 ¶ 8. We find merit to the Aber-crombies’ argument that the chancellor erred in using the Miller survey in reaching his decision. Two surveys were introduced diming the hearing — the Forestry Services survey and the Saul Engineering survey. The surveys differed as to the boundary line between the properties by approximately thirty feet. The parties stipulated to the Forestry Services survey. Saul was the only surveyor who testified at hearing. During his testimony, Saul expressed concerns about the Miller survey. The appellees’ attorney moved to have the Miller survey entered into evidence, but the chancellor excluded the survey since Miller was not present to testify. Saul was asked if a third survey should be
 
 *563
 
 conducted since the surveys presented at the hearing were conflicting. Saul responded, “I urge you to get one.” At the conclusion of the hearing, the chancellor stated:
 

 BY THE COURT: Okay. Well, ... I’m going to appoint another surveyor. Not to go on the ground, but to look at the field notes, look at the two surveys that are platted and get me an opinion as to whether they’re right or wrong.... As far as I’m concerned, I want to see — and I do understand and I see those differences, but we’re literally looking at fifteen foot, or thirty foot.
 

 MR. JONES: Can we ask to appoint Jerry Miller?
 

 BY THE COURT: No, I’m going to appoint somebody separate. And I’ll figure out who I’m going to appoint. I’m not real sure right now. But I’m going to get somebody. Like I said, strictly for the purposes of reviewing the surveys. If you get another one, I’ll leave the record open.
 

 ¶ 9. Regardless of the chancellor’s statements, the chancellor considered the Miller survey in making his judgment. The chancellor’s order states:
 

 That the survey of Miller is dated January 11th, 2009, and does reflect a date of having found half-inch rebar and big post at the NE corner of the NE 1/4 on April 17th of 2009. Since the Court accepted no additional testimony[,] this fact is noted[;] however, having viewed the property[,] particularly the old fence post that marked the corner, the Court finds that the survey is accepted.
 

 ¶ 10. The Abercrombies argue that the Miller survey was not evidence and should not have been relied on by the chancellor. The Abercrombies object to the use of the Miller survey because they argue it is incorrect as to all corners of the property except the point of beginning. The Carters argue that the chancellor’s opinion was not in error because the chancellor did not rely on the Miller survey; rather, the chancellor relied on his own physical inspection of the property and the Forestry Services survey. Also, the Carters argue that the Abercrombies’ argument is moot because the chancellor left the record open for an additional survey, and the Aber-crombies did not object.
 

 ¶ 11. We find the chancellor erred in considering a survey that was not allowed into evidence. The survey was properly excluded at the hearing as hearsay. M.R.E. 802. The parties were not allowed to examine the Miller survey at the hearing, nor were they allowed to question Miller, the surveyor. We also find no merit to the Carters’ assertion that the Abercrombies should have objected to the Miller survey. The Abercrombies had no reason to object to the Miller survey because the chancellor said a different surveyor would be used to review the surveys done by Saul Engineering and the Forestry Services.
 

 ¶ 12. Having found that the chancellor abused his discretion in using the Miller survey, we reverse the chancellor’s judgment and remand this case for a new trial on the merits.
 

 ¶ 13. THE JUDGMENT OF THE COVINGTON COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
 

 IRVING AND GRIFFIS, P.JJ, MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.