# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00075-COA

| | |
|---|---|
| **PATRICK REVETTE AND SCOTT REVETTE** | **APPELLANTS/ CROSS-APPELLEES** |

**v.**

| | |
|---|---|
| **ROBERT FERGUSON AND LILLIAN R. FERGUSON** | **APPELLEES/ CROSS-APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2016 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE JR. |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LEE TURNER |
| | ROBERT KASEY WELLS |
| ATTORNEYS FOR APPELLEES: | TERRY L. CAVES |
| | RISHER GRANTHAM CAVES |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. In March 2015, Patrick and Scott Revette filed a complaint against Robert and Lillian Ferguson in the Wayne County Chancery Court. In their complaint, the Revettes sought to confirm title to a 1.14-acre parcel of real property. The Fergusons responded with an answer and a counterclaim, alleging that they had acquired title to the property by adverse possession. During trial on February 24, 2016, the Revettes and Fergusons stipulated to Exhibit 7, which included a surveyed legal description of the Fergusons' record title property and showed the disputed 1.14 acres shaded in orange. The chancellor ultimately found that

the Fergusons adversely possessed the disputed property. Prior to entering his final judgment, the chancellor ordered the Fergusons to obtain a survey of the disputed property. The Fergusons did so, and the chancellor attached the survey to his final judgment, marking it "Exhibit A." The Revettes appeal, arguing the chancellor erred in his adverse-possession finding and in using the Fergusons' survey. We affirm in part and reverse and remand in part.

## BACKGROUND

¶2.     This suit concerns ownership of a roughly 1.14-acre parcel of land in rural Wayne County. It is located along the top base of an old river channel of the Chickasawhay River, bounded on the northwest by thirty acres owned by the Fergusons and on the southeast by fifty acres owned by the Revettes.[1] A natural bluff, twelve to fifteen feet high, separates the 1.14-acre parcel from the remainder of the Revettes' property.

¶3.     The Fergusons purchased their property in 1987—and although their record title did not encompass the disputed parcel, the Fergusons believed they owned it. In fact, the disputed parcel belonged to the Revettes' predecessors in interest, Hallie Jo and Wanda Hutto. In 1998, the Huttos sold their land, including the disputed parcel, to Jennifer Rabourn Stanley. In 2006, the Revettes bought their fifty acres from Stanley.

¶4.     After the Fergusons acquired their property in 1987, they, their family members, and

---

[1] The Fergusons' property is described as "all that part of the North half of Section 12, Township 6 North, Range 6 West, lying North and East of the Chickasawhay River, containing thirty (30) acres, more or less." The Revettes' property is described as "all that part of the South half of Section 12, Township 6 North, Range 6 West, which lies South and East of the Chickasawhay River, containing fifty (50) acres, more or less."

2

guests began using the disputed parcel for hunting, fishing, camping, and riding horses. In 1989, they began pasturing cattle on it. As the disputed land can be considered a wetland or swamp, activity on the land was dependent on the water level and the time of year. In the fall and winter, when the water level was typically up, the Fergusons used the disputed parcel for hunting and fishing. During the spring and summer, when the land was drier, the Fergusons let their cattle graze to the bluff, which served to contain them. From 1987 to 1993, the Fergusons leased the disputed property to a hunting club. The club's members fished and hunted deer, duck, and rabbit on the disputed parcel. They also put up "no trespassing" signs and hunting stands.

¶5. In 2012, the Revettes bulldozed and destroyed part of the bluff that served as the natural barrier between the Ferguson and Revette properties. When one of the Fergusons' bulls escaped, the Fergusons put up a fence to contain their cattle.[2] The Revettes tore the fence down, three more cows got out, and the Fergusons repaired the fence. The Revettes tore the fence down a second time, and the Fergusons repaired it again.

¶6. On March 17, 2015, the Revettes filed suit against the Fergusons in the Wayne County Chancery Court, seeking confirmation of title and boundary lines, alleging trespass, and seeking a declaratory judgment. On April 9, 2015, the Fergusons filed their answer and counterclaim against the Revettes for confirmation of title and confirmation of boundary lines, adverse possession, declaratory judgment, trespass, and preliminary injunction.

---

[2] The chancellor found that the fence was not located on the disputed property because it was erected halfway up the bluff and the Fergusons only claimed to adversely possess the land up to the base of the bluff.

3

¶7.     On February 24, 2016, a trial was held on the merits. During trial, the Fergusons introduced a surveyed legal description encompassing (1) the Fergusons' record title property and (2) the 1.14-acre parcel in dispute, colored in orange. The parties stipulated that the surveyed legal description be entered into evidence as Exhibit 7, and that the disputed 1.14 acres was colored in orange. On June 15, 2016, the chancellor entered his findings of fact and conclusions of law, granting the Fergusons' claim for adverse possession of the 1.14-acre parcel and denying all other claims for relief. The chancellor directed the Fergusons to procure a survey of the disputed property so a legal description could be included in the final judgment. The Fergusons subsequently engaged Saul Surveying and Mapping LLC (Saul) to prepare a plat of the legal description. Concerned that the Fergusons' survey was inconsistent with the chancellor's findings, the Revettes engaged Walker Mapping and Planning (Walker) to survey their property. On November 30, 2016, the Fergusons filed a motion for the entry of a final judgment, which included the Saul survey. On December 13, the Revettes filed their response and the Walker survey, arguing the Saul survey included an additional .08 acres of the river channel and was not in accordance with the chancellor's findings of fact and conclusions of law.

¶8.     On December 14, 2016, the chancellor entered his final judgment. The Revettes have timely appealed, arguing the chancellor erred in: (1) finding that the Fergusons adversely possessed the disputed property; (2) utilizing and considering the Fergusons' survey without its admission into evidence; (3) alternatively failing to address the discrepancies between the competing surveys; and (4) using the portion of the Fergusons' survey that showed the

4

Fergusons adversely possessed .08 acres of the Chickasawhay River. We affirm the chancellor's finding that the Fergusons adversely possessed the disputed parcel but reverse and remand so that the Revettes may have an opportunity to challenge the Fergusons' survey and may cross-examine the surveyor. Concerning the Fergusons' cross-appeal from the chancellor's judgment denying them recovery on trespass, compensatory and punitive damages, and attorney's fees, we affirm the chancery court.

## STANDARD OF REVIEW

¶9. This Court employs a limited standard of review when examining and considering the decisions of a chancellor. *Cook v. Robinson*, 924 So. 2d 592, 594 (¶9) (Miss. Ct. App. 2006). "When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings." *Id.* In other words, we will not disturb a chancellor's findings unless they are clearly erroneous or an erroneous legal standard was applied. *Id.* "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of the witnesses and the weight of their testimony." *Id.* We review questions of law de novo. *Id.*

## ANALYSIS

### I. Adverse Possession

¶10. On appeal, the Revettes argue that the chancellor erred in his application of the facts to the law by finding that the Fergusons satisfied their burden of proving adverse possession by clear and convincing evidence.

¶11. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) sets forth the following:

Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title[.]

To establish title by adverse possession, the Fergusons had to prove by clear and convincing evidence that their possession of the 1.14-acre parcel was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 669 (¶7) (Miss. Ct. App. 2013). The chancellor found the Fergusons met their burden of proof as to each element. We review the chancellor's findings below.

### 1. Under Claim of Ownership

¶12. In determining whether the Fergusons staked a proper claim of ownership, the chancellor's inquiry was whether the Fergusons' possessory acts were sufficient to "fly [their] flag" and put the record title holder on notice that the land was being held under an adverse claim of ownership. *Hill v. Johnson*, 27 So. 3d 426, 431 (¶19) (Miss. Ct. App. 2009). "The claim of ownership must have existed at the beginning of the statutory period of possession and not possession with the intent to claim as soon as the statutory period passed." *Warehousing Mgmt. LLC v. Haywood Props. LP*, 978 So. 2d 684, 688 (¶22) (Miss. Ct. App. 2008).

¶13. On appeal, the Revettes point out that the chancellor determined "[t]here was no evidence that the Fergusons ever put the Revettes on notice of their claim of title by adverse possession[.]" *See Trotter v. Gaddis*, 452 So. 2d 453, 457 (Miss. 1984) ("[P]ossession must

be sufficient to put another on notice, actual or imputable, of an adverse claim to his property. Without such notice, possession will never ripen into title."). After reviewing the record, we find this issue is moot because the Fergusons' actions provided sufficient notice to the Revettes' predecessors in interest. Robert testified that when he bought his property in 1987, he believed that his purchase included the disputed parcel. From that point on, the Fergusons treated the disputed parcel as their own. Robert and Lillian's daughter, Robbie, testified that since 1987, she and her family ran cattle, rode horses, hunted, fished, camped, and planted grass on the disputed property. From 1988 to 1993, the Fergusons leased the disputed parcel to a hunting club, which put up leaning and climbing deer stands and "no trespassing" signs that were visible from 300 to 400 feet. The Fergusons also gave Jennifer's son, David Stanley, permission to hunt on the disputed parcel. We hold that these activities provided sufficient notice to the Huttos and Stanley, the prior owners of the Revettes' property.

¶14.    The Revettes also argue that the chancellor erred by not considering the Fergusons' failure to pay taxes on the disputed parcel. But "payment of taxes is simply one incident to possession and whether an adverse possessor has paid property taxes on the land in controversy is not dispositive of the claim of ownership." *Nosser v. B.P. Buford*, 852 So. 2d 57, 61 (¶17) (Miss. Ct. App. 2002).

¶15.    The Revettes additionally argue that the Fergusons' lack of record title to the disputed parcel undermines their claim of ownership. We find this argument is without merit. "[I]t does not matter whether land claimed under adverse possession [is] within or without the

7

'call of the title deeds.'" *Pieper v. Pontiff*, 513 So. 2d 591, 594 (Miss. 1987).

¶16.   We find there was sufficient evidence to support the chancellor's finding that the Revettes satisfied this element by clear and convincing evidence.

### 2.   Actual or Hostile

¶17.   "The actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner." *Hill v. Johnson*, 27 So. 3d 426, 431 (¶23) (Miss. Ct. App. 2009).  "Possession is defined as effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *Roberts*, 118 So. 3d at 670 (¶10).  "Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed." *Id.* (quoting *Wicker v. Harvey*, 937 So. 2d 983, 993-94 (¶34) (Miss. Ct. App. 2006)).  "The adverse possessor must also possess the property without permission, because permission defeats any claim of adverse possession." *Roberts*, 118 So. 3d at 670 (¶10) (citing *Apperson v. White*, 950 So. 2d 1113, 1118 (¶12) (Miss. App. 2007)).  But "once adverse possession has begun, the record title owner cannot stop the running of the period merely by granting permission." *Taylor v. Bell*, 87 So. 3d 1134, 1138 (¶14) (Miss. Ct. App. 2012).

¶18.   The Revettes argue the Fergusons' claim fails under this element because Robert asked Patrick for permission before installing a boundary-line fence to contain his cattle in the summer of 2012.  Robert denied requesting permission, but even assuming he did ask to

8

install the fence, this issue is of no consequence. The Fergusons began their adverse possession of the disputed parcel in 1987 without permission from the then-title owners, the Huttos. Thus, the conversation regarding the fence—presumably in 2011 or 2012—was more than ten years after the period for the adverse-possession claim began to run. Further, this Court has held that once title has been acquired by adverse possession, "it is not relinquished merely by the new owners indicating a belief in the former owner's title." *Id.* As previously discussed, the Fergusons hunted, fished, ran cattle, and planted on the disputed parcel. They also leased the property to a hunting club from 1988 to 1993. "A claimant giving permission to allow another to use the land is a factor weighing in favor of adverse possession." *Webb v. Drewrey*, 4 So. 3d 1078, 1083 (¶18) (Miss. Ct. App. 2009). We hold that the Fergusons' possessory acts of hunting, fishing, running cattle, leasing the property, and planting on it were sufficiently hostile.

### 3. Open, Notorious, and Visible

¶19. "In addition to the requirements that possession be under a claim of ownership and hostile, possession must also be open, notorious, and visible." *Roberts*, 118 So. 3d at 670 (¶13). The possessor "must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Id.* (quoting *Wicker*, 937 So. 2d at 994 (¶35)). "[A]dverse possession of 'wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Apperson*, 950 So. 2d at 1117 (¶8). As such, "the chancellor must look to the quality and not the quantity of the acts indicative

9

of possession." *Id.*

¶20. The Revettes contend that the chancellor improperly classified the disputed property as "wild lands"; thus, they argue that the chancellor erroneously applied a lower burden of proof in determining the Fergusons adversely possessed the land. In particular, the Revettes argue the disputed property is not wild because of the close proximity of their camp house and adjacent erosion improvements. The chancellor visited the land and after observing its characteristics and topography, determined that it was wild. The chancellor noted that he inspected where the bluff had been cut, but was unable to inspect the remainder of the disputed property because it was too wet. The chancellor also found that the only improvements to the land included a small section of fencing halfway up the bluff and fencing on the Revettes' property. In reviewing the record, we find substantial evidence supports the chancellor's classification of the land as wild.

¶21. The Revettes also assert, for a second time, that they were not provided notice of the Fergusons' adverse-possession claim. Because we found earlier that sufficient notice was provided to the Revettes' predecessors in interest, we decline further discussion of this argument.

¶22. Next, the Revettes argue that the chancellor erred in not addressing the Fergusons' failure to mark their boundary lines with paint or flagging. The Revettes assert that under *Woodall v. Ross*, 317 So. 2d 892, 895 (Miss. 1975), the actions a defendant fails to commit are "equally significant [to the actions a defendant commits] under the 'open, notorious and visible' element." We do not find that a fair reading of *Woodall* reflects this assertion. The

10

court in *Woodall* found it "significant to note" that although the would-be adverse possessor surveyed his own land, he did not survey and mark the land he was claiming by adverse possession. *Id.* The *Woodall* court made this note after holding that the appellant's "few meager acts of ownership . . . did not ripen into a legal title." *Id.* *Woodall* does not merit reversal of the chancellor's finding as to this factor.

¶23. The chancellor found that the testimony presented in this case proved by clear and convincing evidence that the Fergusons had unfurled their flag on the Revettes' land and kept it flying such that the Revettes would have actual or constructive knowledge of the Fergusons' presence. Since 1987, the Fergusons and their relatives have hunted and fished on the disputed land. They testified that they grazed as many as 300 cattle on the land. They also erected fences on the land, rode horses on it, and planted corn, milo, and rye on it. Further, the hunting club that leased the land from 1988 to 1993 put up "no trespassing" signs that were visible from 300 to 400 feet. We agree with the chancellor that these actions were open, notorious, and visible.

### 4. Continuous and Uninterrupted for a Period of Ten Years

¶24. Based on the record, the Revettes did not assert their claim of ownership until filing suit in 2015. So the Fergusons' possession of the disputed property was continuous and without interruption from 1987 until 2015, well in excess of the ten-year period required by the statute. We accordingly find there is substantial evidence to support the chancellor's finding that the Fergusons possessed the property continuously and uninterruptedly for ten years.

11

### 5. Exclusive

¶25. "Exclusive possession means that the possessor 'evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising the dominion of a sole owner.'" *Roberts*, 118 So. 3d at 671 (¶15) (quoting *Wicker*, 937 So. 2d at 995 (¶40)). "It does not mean that no one else can use the property." *Id.* "Exclusivity, within the meaning of the statute, means that the adverse possessor's use of the property was consistent with an exclusive claim to the right to use the property." *Id.* (quoting *Apperson*, 950 So. 2d at 1119 (¶15)).

¶26. The Fergusons presented ample testimony regarding the actions that they, their invitees, and their lessees took on the disputed property. We agree with the chancellor's findings under this element.

### 6. Peaceful

¶27. "Simple disputes often arise between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them." *Apperson*, 950 So. 2d at 1119 (¶16). No evidence was presented establishing a non-peaceful existence between the Fergusons and the Revettes or their predecessors in interest. We agree with the chancellor's finding that the Fergusons satisfied this element.

¶28. The evidence presented before the chancery court clearly established each element of adverse possession by the Fergusons. The chancellor's findings of fact are supported by the record, and his conclusions of law are sound.

## II.    Use of the Fergusons' Survey

¶29.    The Revettes argue that the chancellor should not have considered the Saul survey, "Exhibit A," in his final judgment because they did not have the opportunity to challenge that survey at a hearing or cross-examine the surveyor and it was not admitted as evidence. Although the Fergusons argue that the Revettes waived this issue, we find the Revettes preserved their objection by responding to the Saul survey and attaching their own competing survey, the Walker survey. We hold that it was error for the chancellor to consider a survey without proof being taken and upon the Revettes' objection; therefore, we reverse and remand this issue to the chancery court.[3]

¶30.    In order to have a survey properly admitted into evidence, the surveyor needs to be called to explain and be subject to cross-examination. *White v. Usry*, 800 So. 2d 125, 131 (¶26) (Miss. Ct. App. 2001). In *Abercrombie v. Carter*, 73 So. 3d 561, 562-63 (¶¶8-11) (Miss. Ct. App. 2011), we held it was error for a chancellor to consider a survey that was properly excluded at a hearing as hearsay under Mississippi Rule of Evidence 802, noting that the parties were not allowed to challenge the survey at the hearing or cross-examine the surveyor. We find the chancellor committed error in this case for similar reasons. The Revettes did not have the opportunity to cross-examine the Fergusons' surveyor, and the survey was not admitted into evidence for the chancellor's consideration. Further, a comparison of "Exhibit A" with Exhibit 7, which the parties stipulated to, reveals

---

[3] The Revettes list two other issues on appeal involving the differences between their survey and the Fergusons' survey. Because we find this issue dispositive, we need not address the Revettes' remaining issues.

13

inconsistencies. Notably, the thalweg of the Chickasawhay River and the approximate water line differ in both exhibits; as do the call lines of the land adversely possessed. We therefore reverse and remand this matter to the chancellor so that the Revettes may challenge the survey in "Exhibit A," may cross-examine the surveyor, and may offer their Walker survey for use by the court.

### III.    Cross-Appeal

¶31.    On cross-appeal, the Fergusons argue the chancellor committed manifest error and abused his discretion by dismissing their claims for trespass, compensatory damages, punitive damages, and attorney's fees. The Fergusons ask this Court to reverse and remand the chancellor's decisions as to these issues. Alternatively, the Fergusons ask that the chancellor's decisions concerning trespass and nominal damages be reversed and remanded.

¶32.    In his conclusions of law, the chancellor found that because the Fergusons' adverse possession claim extended only to the land at the base of the bluff, the Revettes, as record titleholders, had the right to remove dirt from the top and sides of the bluff. The chancellor also found that following the cut the Revettes made to the bluff, the Fergusons erected a fence halfway up the side of the bluff, on the Revettes' property. The record supports these findings. Thus, we uphold the chancellor's dismissal of the Fergusons' trespass claim because the actions the Fergusons complain of did not occur on the land they adversely possessed. *See Reeves v. Meridian S. Ry. LLC*, 61 So. 3d 964, 968 (¶19) (Miss. Ct. App. 2011) ("A trespass to land is committed when a person intentionally invades the land of *another* without a license or other right." (Emphasis added)). Absent proving trespass, the

14

Fergusons were not entitled to damages or attorney's fees; therefore, we find the chancellor was correct in refusing to award them.

## CONCLUSION

¶33. The chancellor found that the Fergusons established their adverse-possession claim by clear and convincing evidence. Reviewing the record, we find that the chancellor had sufficient evidence to correctly apply the facts to the law and reach his conclusion, and he did not abuse his discretion. Accordingly, we affirm the chancellor's holding that the Fergusons acquired the disputed land designated in Exhibit 7 by stipulation. But after trial, the chancellor used a survey to delineate the exact boundaries of the stipulated area of land without giving the Revettes an opportunity to challenge the survey at a hearing, after opposition and a conflicting survey was proffered by the Revettes. We reverse and remand for the court to hear the Revettes and Fergusons on the issue of the appropriate legal description and survey to be utilized by the court. We affirm the chancellor's dismissal of the Fergusons' trespass claim and his refusal to grant damages and attorney's fees for trespass.

¶34. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR. TINDELL, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

15