ROBERTS, J.,
for the Court:
¶ 1. Virginia Massey sued siblings Ronald E. Lambert and Patricia Renee Lambert and claimed that she had adversely possessed some of their property. The Greene County Chancery Court found that Virginia and her predecessor in title failed to present a prima facie case of adverse possession based on evidence that Virginia and her predecessor in title, her husband, had permission to use the disputed property. Aggrieved, Virginia appeals and argues that the chancellor erred when he held that Virginia and her predecessor in title had permission to use the disputed property. Finding no error, we affirm.
FACTS
¶2. Both Virginia’s and the Lamberts’ properties derived from Elliot McLeod. Virginia’s husband, Jacob Dennis Massey (Dennis) acquired an acre of property from McLeod in 1961 and built a machine shop shortly thereafter. Approximately eight years later, John Edsel Lambert[1] acquired property from McLeod. The property that John acquired adjoined the western border of the property that Dennis had acquired in 1961.[2]
¶ 3. Not long after John acquired his property, he discovered that Dennis’s shop had actually been built on John’s property. According to John, he brought his discovery to Dennis’s attention. John’s understanding was the he and Dennis would swap property foot-for-foot so the shop would not be on John’s property. However, John and Dennis never carried out their plan to swap property. Dennis died intestate in 1979, leaving Virginia and their children as his heirs. Virginia’s children gave her quitclaim deeds regarding their shares of Dennis’s property.
¶ 4. Virginia sued John’s adult children, Ronald and Patricia. According to Virginia, she had acquired the disputed property by adverse possession. The parties went to trial on February 22, 2010 and March 26, 2010. The testimony and other evidence produced at trial will be discussed below.
¶ 5. On June 4, 2010, the chancellor issued his findings of fact, conclusions of law, and judgment. The chancellor held that Virginia failed to present a prima facie case of adverse possession because her use of the property — as well as her predecessor in title’s use of the property— was permissive. Specifically, the chancellor held as follows:
The proof has shown that [Virginia] made use of the property in question for a continuous and uninterrupted period of ten years. However, [Virginia’s] late husband, [Dennis] ... acknowledged [John’s] ownership and, therefore, the use was neither under claim of ownership nor hostile. Finally, the use by [Virginia] and her family was with permission of [John] and permissive use does not ripen into adverse possession. The evidence submitted does not support [Virginia’s] position. To the contrary, the proof has shown that [Virginia’s] use was permissive.
To support that conclusion, the chancellor relied on the following evidence:
*848 [John] testified that he and [Dennis] ... discussed the problem and agreed that the workshop was constructed on the parcel owned by [the Lamberts]. To resolve the problem, [Dennis] and [John] discussed the possibility of exchanging parcels of land of equal size and value in a manner which would allow [Dennis] to obtain title to the parcel upon which the workshop was situated. [John] and [Dennis] were unable to finalize such a transaction prior to the death of [Dennis] However, [John] did give [Dennis] permission to use the land upon which the workshop was situated.
Aggrieved, Virginia appeals.
STANDARD OF REVIEW
¶ 6. This Court has a limited standard of review in examining and considering the decisions of a chancellor. Cook v. Robinson, 924 So.2d 592, 594 (¶ 9) (Miss.Ct.App.2006) (citing Ellison v. Meek, 820 So.2d 730, 734 (¶ 11) (Miss.2002)). “When reviewing a chancellor’s decision, we will accept a chancellor’s findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied.” Id. (quotation omitted). “The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony.” Id (quotation omitted). We review questions of law de novo. Id.
ANALYSIS
¶ 7. The Mississippi Legislature has enacted the following statute regarding adverse possession:
Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
Miss.Code Ann. § 15-1-13(1) (Rev.2003). One who seeks to acquire real property by adverse possession must demonstrate the following six essential elements by clear and convincing evidence: the property must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Cook, 924 So.2d at 595 (¶ 11). Clear and convincing evidence has been defined as follows:
that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact[-]finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.
Moran v. Fairley, 919 So.2d 969, 975 (¶ 24) (Miss.Ct.App.2005) (quoting Travelhost, Inc. v. Blandford, 68 F.3d 958, 960 (5th Cir.1995)). “Clear and convincing evidence is such a high standard [of proof] that even the overwhelming weight of the evidence does not rise to the same level.” Id. (citing In re C.B., 574 So.2d 1369, 1375 (Miss.1990)).
¶ 8. Virginia called five witnesses. Her son, Kenneth Massey, testified that he and his uncle, Elliot, helped Dennis mark the property Dennis acquired from Elliot. According to Kenneth, they intended to ensure that Dennis acquired a full acre of property. Billy Brewer, the Greene County surveyor, testified regarding his survey of Virginia’s property. He explained that *849 the error in this case originated from the fact that Virginia’s deed runs to the cen-terline of state highway 68. It appears that Dennis, Kenneth, and Elliot began their measurements from the edge rather than the center of state highway 68. Virginia also called her son, Ronnie Massey, and her daughter, Judy McLeod, who testified regarding their family’s use of the disputed property.
¶ 9. The Lamberts called three witnesses. Surveyor Benjamin Proctor testified regarding his own survey of Virginia’s property. Ronnie Lambert’s testimony primarily consisted of explaining his and his sister’s acquisition of John’s property. According to the chancellor, the case turned on the testimony of the Lamberts’ other witness: their father, John.
¶ 10. John testified that he discovered that Dennis’s shop encroached on his property after John had his property surveyed in 1969. According to John, Dennis’s shop “needed to go [e]ast to be on the property that he had a deed to.” John then went on to testify:
Well, the agreement between Mr. Massey and I — we found it out. He had a good business going there, and he got upset when he found it out, the property wasn’t — that the shop was not on his deeded land. So I waited to discuss it, I said, Dennis, don’t get too upset about it, you’ve got property to the North of me, and you’ve got — your wife has got property to the [e]ast of me, I said. We agreed to swap foot for foot.
Virginia’s attorney objected on the basis that “[a]ny agreements would be violative of the statute of frauds, any agreements would violate hearsay objections.” The chancellor did not sustain the objection. Instead, the chancellor stated that John “can just testify about what he did.” John then testified, “we would swap footage, foot by foot, for equal value.” During cross-examination, John was asked whether his position was that he did not want Virginia to have the property where the shop had been.[3] John responded:
No, that’s not — because I agreed with [Dennis] that we would swap land of equal value.... I never made any claims against any of them because [Dennis] and I agreed. And where you see that they had their original plot laid out, I have never taken any trees down because he and I agreed to swap land.
¶ 11. As mentioned, the chancellor concluded that Virginia failed to prove adverse possession by clear and convincing evidence based on John’s testimony that he had given Virginia and her predecessor in title, Dennis, permission to use the disputed property. We do not find that the chancellor erred. It is true that “[a]n occupant of land who mistakenly believes the land lies within the boundaries established by his own deed, when the land actually belongs to another, may acquire title to that land by adverse possession.” Niebanck v. Block, 35 So.3d 1260, 1265 (¶ 15) (Miss.Ct.App.2010) (quotation omitted). However, “[i]f possession is permitted by the owner, it cannot be adverse.” Id. at 1266 (¶ 17) (citation omitted). “Adverse possession is totally inconsistent with that of permissive use.” Id. (quoting Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1153 (Miss.1992)). Virginia bore the burden of proving adverse possession by clear and convincing evidence. John testified that he and Dennis agreed to swap property foot by foot to resolve the fact that Dennis had mistaken *850 ly built his shop on land that he did not own. There was no evidence that John ever withdrew his permission or his desire to exchange property so that Virginia could obtain the disputed property. In fact, John testified that he was still willing to conduct the exchange. To be clear, this case does not turn on the existence of a formal agreement between Dennis and John. It turns on a lack of clear of convincing evidence of a prima facie case of adverse possession based on the presence of evidence that Dennis was aware that his shop was not on his property and John permitted Dennis’s — and, by extension, Virginia’s — continued use of the shop because they had discussed exchanging land. Accordingly, we find no merit to Virginia’s claim on appeal.
¶ 12. THE JUDGMENT OF THE GREENE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. John and Virginia are first cousins.

. After John acquired property from McLeod, John deeded it to his children, Ronald and Patricia, and reserved a life estate for himself and his wife.

. At the time of trial, the concrete slab was all that remained of the thirty foot by sixty foot shop.