IRVING, P. J.,
for the Court:
¶ 1. In November 2009, Young’s Creek Investment Inc. (Young’s Creek) filed a complaint in the Tallahatchie County Chancery Court against Michael and Lan-nie Roberts (the Robertses) to remove a cloud on and to confirm title to a 7.79-acre parcel of land. After a trial, the chancery court held that Young’s Creek had acquired title to the land through adverse possession. Peeling aggrieved, the Rob-ertses appeal and argue that the court erred in finding that Young’s Creek had obtained title to the disputed property through adverse possession, that Young’s Creek did not have permissive use of the disputed property, and that Young’s Creek had obtained title to the land under color of title.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. In 1986, Young’s Creek began renting a 482-acre plot of land adjacent to the disputed 7.79-acre plot. On August 15, 1988, Young’s Creek purchased the 482-acre plot. The 482-acre plot and the 7.79-acre plot are located immediately south of Ascalmore Creek. Young’s Creek believed that Ascalmore Creek was the boundary line between its property and its neighbor’s property located north of the creek, and that the disputed 7.79 acres was part of Young’s Creek’s property. On August 24, 1988, Young’s Creek signed a ten-year conservation contract with the Department of Agriculture, allowing the agency to plant pine trees on its property, including the disputed 7.79 acres. After the contract’s initial ten years expired, it was renewed annually until September 2007.
¶ 4. In 2000, Roy Shook, Young’s Creek’s neighbor and the owner of the acreage north of Ascalmore Creek at that time, had a survey done on his property. Shook’s attorney sent a letter to Young’s Creek informing it that the boundary line between Young’s Creek’s and Shook’s properties was not Ascalmore Creek. More specifically, the letter explained that the 79.78 acres that Shook owned included the 7.79-acre plot south of the creek. Young’s Creek’s lawyer sent Shook a letter *669 informing him that Young’s Creek disagreed with the survey. Young’s Creek took the position that Shook staked off property that belonged to Young’s Creek. Neither party took any further action.
¶ 5. Shook subsequently conveyed his interest in the property to his sister Dossie Shook Roberts. In July 2007, the Rob-ertses purchased Dossie’s 79.78 acres, which, by deed, included land on the north side of Ascalmore Creek and the 7.79-acre plot on the south side of the creek. That same year, the Robertses erected a fence enclosing the 7.79-acre plot. Shortly thereafter, Young’s Creek filed a lawsuit acknowledging that the Robertses were record holders of the plot in dispute, but claiming to have adversely possessed the property by hunting, fishing, farming, and renting the property to the Department of Agriculture from 1988 until the Robertses erected the fence in 2007. Thad Roberts, Dossie’s husband, testified that two members of Young’s Creek were given permission to hunt on the land:
Q: Was there any agreement that you had with members of Young’s Creek that allowed them to hunt on the disputed seven-acre tract?
A: We had a verbal agreement. And, of course, Clinton and Terry and I worked together for 20 years or better.... And I stated to them many a time that we did not care for them hunting on that land.
Q: You gave them permission?
A: Yes.
¶ 6. Additional facts, as necessary, will be related in the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Adverse Possession

¶ 7. The Robertses contend that Young’s Creek did not prove all of the elements necessary to show that it obtained the disputed property by adverse possession. “[F]or possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (8) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Blackburn v. Wong, 904 So.2d 134, 136 (¶ 15) (Miss.2004) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992)). “We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.” Taylor v. Bell, 87 So.3d 1134, 1137 (¶ 6) (Miss.Ct.App.2012) (citing Buford v. Logue, 832 So.2d 594, 600 (¶ 14) (Miss.Ct.App.2002)). The chancellor must find that the plaintiffs proved each element of their claim by clear and convincing evidence. See Blackburn, 904 So.2d at 136 (¶ 16).

A. Claim of Ownership

¶ 8. Under the claim-of-ownership element of adverse possession, the chancellor must determine whether the purported adverse possessor’s actions were sufficient to “fly a flag over the property” and put the actual owners on notice that the property was “being held under an adverse claim of ownership.” Apperson v. White, 950 So.2d 1113, 1117 (¶ 7) (Miss.Ct.App.2007) (citing Walker v. Murphree, 722 So.2d 1277, 1281 (¶ 16) (Miss.Ct.App.1998)). The Mississippi Supreme Court has stated:
When determining whether the [possessors] undertook possessory acts sufficient to support a claim of adverse possession, the chancellor must look to the quality and not the quantity of the acts indicative of possession. Possessory acts necessary to establish a claim of *670 adverse possession may vary with the characteristics of the land, and adverse possession of wild or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands.
Id. at (¶ 8) (internal quotations and citations omitted). In the present case, the chancellor determined that the land in dispute was wild land. Therefore, the claim of adverse possession of the 7.79 acres may be proved by a showing of possessory acts that would be insufficient to establish the claim if the 7.79 acres were improved and developed land.
¶ 9. The chancellor reasoned that the Robertses’s claim — that Young’s Creek was given permission to hunt on the 7.79 acres — ignores or fails to take into account that Young’s Creek was not given permission to farm, plant trees, raise cattle, or rent the land to others. Young’s Creek’s use of the land was enough to put the Robertses on notice that Young’s Creek held the property under an adverse claim of ownership. Accordingly, we agree with the chancellor that Young’s Creek satisfied this element of adverse possession.

B. Hostile

¶ 10. “Possession is defined as effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses.” Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992). “Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor’s deed.” Wicker v. Harvey, 937 So.2d 983-94 (¶ 34) (Miss.Ct.App.2006) (citing Alexander v. Hyland, 214 Miss. 348, 357, 58 So.2d 826, 829 (1952)). The adverse possessor must also possess the property without permission, because permission defeats any claim of adverse possession. Apperson, 950 So.2d at 1118 (¶ 12).
¶ 11. Regarding possession, Young’s Creek’s actions must constitute effective control over the 7.79 acres that was visible to the eye or perceptible to the senses. The Robertses observed Young’s Creek building deer stands and planting trees on the property. While there was no testimony that the Robertses observed the other actions that Young’s Creek described, those actions were blatant enough to be visible to the eye and perceptible to the senses. Therefore, it is clear that Young’s Creek’s actions demonstrated actual possession of the disputed land.
¶ 12. With regard to the hostile requirement, witnesses for Young’s Creek testified that they believed that the 7.79 acres were described in Young’s Creek’s deed when it purchased the property in 1988. Witnesses for Young’s Creek also testified that they believed the disputed land was included in the rental agreement it entered into with its predecessors in interest two years prior to the purchase of the 482 acres. The chancellor found that the contract with the Department of Agriculture combined with the farming of the land by Young’s Creek rendered Young’s Creek’s occupation of the 7.79 acres hostile. Accordingly, we agree with the chancellor that Young’s Creek’s possession was hostile.

C. Open, Notorious, and Visible

¶ 13. In addition to the requirements that possession be under a claim of ownership and hostile, possession must also be open, notorious, and visible. To satisfy this element, the possessor “must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest.” Wicker, 937 So.2d at 994 (¶ 35) *671 (quoting Blankinship, 605 So.2d at 820). Young’s Creek’s members testified to planting crops and hunting on the 7.79 acres since the mid-1980s. Despite the Robertses’ belief that the tree planting on the 7.79 acres was just an error by a tree-planting company because they were planted “right down beside the boundary line,” Young’s Creek engaged in other activities, including renting the land to the Department of Agriculture, which supports the chancellor’s findings that Young’s Creek’s possessory acts were open, notorious, and visible. Accordingly, we agree with the chancellor that Young’s Creek satisfied this element of adverse possession.

D.Continuous and Uninterrupted for a Period of Ten Years

¶ 14. The plaintiff in an adverse-possession action must be in possession of the property for at least ten years. See Miss. Code Ann. § 15-1-13(1) (Rev.2012). This period of possession must be continuous and uninterrupted. Id. Young’s Creek began possessing the 7.79 acres in 1988 when it purchased the 482 acres from the previous owner and began conducting the various activities discussed above as if it rightfully owned the 7.79 acres until 2007, when the Robertses erected the fence. Therefore, we agree with the chancellor that Young’s Creek was in possession of the 7.79 acres for a total of nineteen years and satisfied this element of adverse possession.

E.Exclusive

¶ 15. Exclusive possession means that the possessor “evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant’s conduct must afford an unequivocal indication that he is exercising [the] dominion of a sole owner.” Wicker, 937 So.2d at 995 (¶ 40) (quoting Rawls v. Parker, 602 So.2d 1164, 1169 (Miss.1992)) (internal quotations omitted). It does not mean that no one else can use the property. Apperson, 950 So.2d at 1119 (¶ 15). “Exclusivity, within the meaning of the statute, means that the adverse possessor’s use of the property was consistent with an exclusive claim to the right to use the property.” Id. (citing Moran v. Sims, 873 So.2d 1067, 1069 (¶ 10) (Miss.Ct.App.2004)). Young’s Creek rented the land in dispute to the Department of Agriculture. That conduct, in addition to the other conduct that the chancellor discussed, amounts to exercising the dominion of a sole owner. We agree with the chancellor that Young’s Creek’s use of the property was consistent with an exclusive claim to the right to use the property.

F.Peaceful

¶ 16. There is no evidence that Young’s Creek’s occupation of the property was not peaceful. Our supreme court has held that expected disputes associated with the use or ownership of the property are not indicative of the possession not being peaceful. See Dieck v. Landry, 796 So.2d 1004, 1009 (¶ 15) (Miss.2001). Here, the chancellor found that Young’s Creek’s possession was peaceful for nineteen years and that there was no evidence of a dispute over ownership or use of the land before the Robertses erected the fence that would not have been considered peaceful. We agree that this element of adverse possession was satisfied.

II. Permissive Use

¶ 17. There cannot be a valid claim of adverse possession when the actual owner has given the possessor permission to use the land. Massey v. Lambert, 84 So.3d 846, 849 (¶ 1) (Miss.Ct.App.2012). The Robertses contend that Young’s Creek was given permission to hunt on the 7.79 acres through a verbal agreement between a Roberts family *672 member and two members of Young’s Creek (Clinton and Terry). Thad testified that Young’s Creek’s members stayed on their side and hunted, and his family stayed on their side and hunted, “except in that seven acres.” As stated, Thad testified that the Robertses “didn’t care about [Clinton and Terry] hunting on [the 7.79 acres].” However, no Young’s Creek member admitted that he was granted permissive use of the land, and even if Thad had given Clinton and Terry permission to hunt on the land, that did not mean that all of Young’s Creek’s members had permission to hunt on the land or that Thad had the authority to give such permission. In fact, Young’s Creek’s members testified that they hunted on the 7.79 acres under the mistaken belief that Young’s Creek owned the 7.79 acres. Also, neither the Robertses nor their predecessor in interest gave Young’s Creek permission to enter into a contract with the Department of Agriculture, plant food plots, fish in the Ascalmore Creek, or engage in any other activity. Therefore, the chancellor, in considering the totality of Young’s Creek’s activities on the property, did not err in finding that Young’s Creek’s possession of the 7.79 acres was hostile and not permissive. We agree with the chancellor that Thad’s claim alone that two Young’s Creek members had permission to use the land for hunting did not defeat Young’s Creek’s claim of adverse possession. This issue is without merit.

III. Color of Title

¶ 18. The Robertses contend that the chancellor erred in finding that Young’s Creek had obtained title to the land in dispute under color of title. “Color of title is an instrument of conveyance or a record which appears to convey title[,] but which in fact does not have that legal effect.” Houston v. U.S. Gypsum Co., 652 F.2d 467, 473 (5th Cir. Unit A Aug.1981). “Thus, for example, an adverse possessor may claim [the property] under the color of title of a defect or imperfect instrument, even though his grantor or a predecessor was entirely without title or interest.” Id. at 474.
¶ 19. The chancellor’s finding that Young’s Creek possessed the 7.79 acres under color of title is incorrect. The chancellor considered color of title as if it were the first element of adverse possession. However, color of title is not an element of adverse possession. Furthermore, in order to possess land under color of title, there must be a defect or imperfection in the deed that, in effect, denies title or interest to the property. Here, there was no defect or imperfection in the deed conveying the 482 acres to Young’s Creek. Both parties acknowledged that the deed conveying the 482 acres to Young’s Creek did not include the 7.79-acre plot. There was no testimony that there was an intent to include the 7.79-acre plot in the deed and that the deed was merely imperfect. The deed does not attempt to convey title to the disputed 7.79 acres and does not have that legal effect. Nevertheless, because color of title is not an element of adverse possession, the chancellor’s finding regarding this issue does not defeat Young’s Creek’s adverse-possession claim.
¶ 20. THE JUDGMENT OF THE TALLAHATCHIE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.