# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01445-COA

CHARLES O'NEAL                                                      APPELLANT

v.

TRACY SYKES BLALOCK AND ROBERT                        APPELLEES
ALLEN SYKES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2015 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN JR. |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CLARENCE MCDONALD LELAND |
| ATTORNEYS FOR APPELLEES: | RENEE H. BERRY |
| | JOHN T. ARMSTRONG JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | DISMISSED APPELLANT'S CLAIM FOR ADVERSE POSSESSION |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In December 2013, Tracy Sykes Blalock and Robert Allen Sykes brought suit against Charles O'Neal in the Copiah County Chancery Court to quiet and confirm title in land on which O'Neal was encroaching. O'Neal responded by claiming ownership of the disputed land through adverse possession. Following trial, the chancery court entered a final judgment holding that O'Neal had failed to prove his claim of adverse possession by clear and convincing evidence. O'Neal timely appealed. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.    On September 19, 1990, O'Neal purchased approximately 255.8 acres of land in Copiah County. Prior to the completion of O'Neal's purchase, he had the land surveyed by Harold King, a registered land surveyor. O'Neal then had a deed prepared based upon King's survey, which he properly recorded, and to which the King survey was attached. Though this case was initiated on December 23, 2013 by Blalock and Sykes as a complaint to quiet and confirm title, the parties elected to proceed with O'Neal's claim for adverse possession, as it would likely be dispositive to the outcome of the case.

¶3.    At trial, O'Neal testified that while King performed the survey, he aided by bulldozing a road along the southern boundary of the property. O'Neal further testified that, out of respect for the adjacent landowners, the road was constructed to favor the north side of the southern boundary line surveyed by King. In addition to the dozing of the road, O'Neal stated that at the time of the survey, King also blazed a red, painted line, which was maintained for "years and years." He testified that he personally observed King place each survey pin[1] in every corner of his property, including point 7, which abuts the western right-of-way of Highway 27, and is a primary area of dispute among the parties. O'Neal asserted that he relied entirely on King's placement of the pins for the boundaries of his property, and believed those pins to be within the calls of his deed.

¶4.    Following the dozing of the road, O'Neal stated that he conducted a variety of acts upon his land, including planting food plots, building a deer stand, hunting, fishing, ATV operation, and inviting others to participate in the same. O'Neal had several different

---

[1] Monuments demarcating property boundaries.

witnesses offer testimony to this effect on his behalf. O'Neal also admitted that while the southern boundary of his property was to follow a due east-west line, unstable terrain and a lake caused his road to deviate from its initially straight course; O'Neal reiterated, however, that he favored the "inside" of his boundary line at all times. No fence was ever built along the southern border surveyed by King.

¶5. In 2006, O'Neal founded Copiah Creek Camping and Recreation LLC. The business consisted of charging admission for those seeking to ride ATVs along the road created by O'Neal, including the disputed area, as well as other portions of his acreage. The "tremendous" volume of ATV traffic resulted in the forming of a "mud pit" where the road was once flat. The "mud pit" is a long ditch located below ground level, and the primary area of dispute among the parties, as it sits north of O'Neal's road, but south of the boundary line claimed by Blalock. The "mud pit" also rests east of the "borrow pit," which is the area where O'Neal's road begins its deviation to the south when following the road in a west-to-east path.

¶6. Blalock inherited the property directly south of O'Neal's on October 23, 2003. Dale Blalock, Tracy's husband, testified that in 2011, he and O'Neal traversed the property border, west to east, and that O'Neal admitted he was encroaching upon the Blalocks' land at several points. And in May 2013, prior to a timber sale, the Blalocks had Hunter Newman, a registered surveyor, perform a survey of their property. Newman's survey showed the Blalocks claimed a total of 129.97 acres. Newman reviewed the King survey, and determined that of the seven pins allegedly placed by King in 1990, only pins 1, 2, and 4

3

coincided with Newman's measurements.[2]

¶7.    As such, the placement of pins 6 and 7—shown to Newman by O'Neal himself—reflected a southerly encroachment of approximately 122.38 feet onto the Blalocks' land.  Newman further testified that for pins 6 and 7 to be accurate, both his and King's surveys would have to be entirely inaccurate at a multitude of other locations, which Newman asserted was highly unlikely.  Newman further testified that King made no mention of pins 6 and 7 on his survey, which would be against industry custom if King did in fact set those pins in 1990.  Thus, when reviewing the King and Newman surveys together, there were at least two common aspects supporting O'Neal's testimony: (1) that, in general, O'Neal bulldozed a road north of King's southerly survey line; and (2) that his road was not entirely straight.

¶8.    In addition to testimony regarding his and King's surveys, Newman stated that he relied upon aerial photographs from winter 2006 and summer 2012 to help determine the location of O'Neal's road in the area of dispute.  The winter 2006 photograph was of a higher resolution than the summer 2012 photograph, and did not show any such road in the area of dispute, as alleged by O'Neal.  In contrast, however, the lower-resolution summer 2012 photograph did show the "mud pit" and road.  O'Neal testified that for the twenty-three years he had possessed his land, he had no knowledge of the encroachment before the instant case was filed in December 2013.

¶9.    Based upon Newman's testimony, the chancellor determined that neither the legal

---

[2] King's pins 1 and 2 relate to the westernmost points of O'Neal's parcel, while pin 4 relates to the most eastern-by-northeast point of O'Neal's parcel.

4

descriptions of the two properties nor the common boundary line was in dispute. Rather, the sole area of relevance pertaining to O'Neal's claim for adverse possession was the 122.38-foot portion of land encroaching on the Blalocks' side of the boundary line—referred to as the "mud pit" and "borrow pit." Finding that O'Neal had failed to prove each essential element of adverse possession by clear and convincing evidence for the portion of disputed land, the chancellor dismissed O'Neal's claim. O'Neal timely perfected his appeal. Finding no error on the part of the chancellor, we affirm.

## STANDARD OF REVIEW

¶10.    "This Court will not disturb the findings of a chancellor unless those findings were manifestly in error, clearly erroneous, or . . . the result of the application of an erroneous legal standard." *Knight v. Covington Cty.*, 27 So. 3d 1163, 1167 (¶14) (Miss. Ct. App. 2009). "Where there is substantial evidence to support a chancellor's findings, [an appellate c]ourt is without the authority to disturb a chancellor's conclusions, although it might have found otherwise as an original matter." *Keener Props. LLC v. Wilson*, 912 So. 2d 954, 956 (¶3) (Miss. 2005). A chancery court's interpretation and application of law, however, is reviewed under a de novo standard. *Id.*

## DISCUSSION

¶11.    O'Neal contends on appeal that the chancellor erred in his application of the facts to the law by finding that O'Neal had failed to satisfy his burden of proving adverse possession by clear and convincing evidence. Reviewing the record before this Court, we disagree.

¶12.    Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) sets forth the following:

(1) Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title[.]

¶13. Thus, for a claimant to establish title by adverse possession, each of the following six elements must be proven by clear and convincing evidence. "For possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 669 (¶7) (Miss. Ct. App. 2013) (citing *Blackburn v. Wong*, 904 So. 2d 134, 136 (¶15) (Miss. 2004)). The claimant bears the burden of proving adverse possession by clear and convincing evidence. *Scott v. Anderson-Tully Co.*, 154 So. 3d 910, 916 (¶14) (Miss. Ct. App. 2015). "Clear and convincing evidence is such a high standard of proof that even the overwhelming weight of the evidence does not rise to the same level." *Massey v. Lambert*, 84 So. 3d 846, 848 (¶7) (Miss. Ct. App. 2012) (citation omitted) (citing *In re C.B.*, 547 So. 2d 1369, 1375 (Miss. 1990)).

### 1.    Under Claim of Ownership

¶14. When determining whether an adverse possessor has staked a proper claim of ownership, the relevant inquiry is "whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder on notice that the lands are held under an adverse claim of ownership." *Hill v. Johnson*, 27 So. 3d 426, 431 (¶19) (Miss. Ct. App. 2009) (citing *Apperson v. White*, 950 So. 2d 1113, 1117 (¶7) (Miss. Ct. App. 2007)). "Adverse possession of 'wild' or unimproved lands may

6

be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Apperson*, 950 So. 2d at 1117 (¶8). As such, "the chancellor must look to the quality and not the quantity of the acts indicative of possession." *Id.* "A party claiming land by adverse possession . . . enclos[ing] the piece of property with a fence is a factor to be considered in determining if adverse possession occurred." *Buford v. Logue*, 832 So. 2d 594, 602 (¶23) (Miss. Ct. App. 2002).

¶15. At the outset, the chancellor specifically noted that the road allegedly built by O'Neal in 1990 did not encroach on the Blalock property until one crossed the "borrow pit" and approached the "mud pit," heading in a west-to-east direction. As such, the chancellor held that any acts of ownership taking place west of the "borrow pit" would not sufficiently place an owner on notice of an encroachment, and therefore, were irrelevant. Thus, the only area where O'Neal's "flag" may have been flown was the 122.38-foot southerly deviance consisting of the "borrow pit" and "mud pit."

¶16. Here, the chancellor found that O'Neal had failed to clearly and convincingly satisfy this first element by highlighting a variety of problems with O'Neal's evidence. To begin, the chancellor noted that pin 7—allegedly placed by King in 1990—was located in a set of bushes, no photographs of the pin were introduced into evidence, and there was no testimony that the area surrounding the pin was clearly visible. Moreover, the chancellor noted that, heading from the westernmost point of the boundary line in an easterly direction, the southerly encroachment did not begin until after approximately 1,000 to 1,200 feet—raising the issue of whether an owner could reasonably perceive a 122.38-foot southerly deviance

7

when traversing such a distance. The chancellor noted further that even O'Neal knew his southern border was a due east-west line, but believed the "pins were within the calls of his deed."

¶17. The chancellor next made light of the fact that several of the witnesses testified that O'Neal's road could not be seen from Highway 27; no photographs of the road were entered into evidence. Therefore, the chancellor concluded that the southern property owner could not have seen the road from Highway 27, nor pin 7 located in the bushes. Furthermore, many of the acts or claims of ownership asserted by O'Neal pertained to his invitees rather than the public at large. In addition, there was no photographic evidence of the alleged painted line marking the boundary, nor any indication that O'Neal maintained the painted boundary. Adding to these considerations, the chancellor found that O'Neal had not had the disputed area of land assessed to him or paid taxes on it, in large part due to O'Neal's belief that the encroaching area was within the calls of his deed. *See Nosser v. Buford*, 852 So. 2d 57, 61 (¶17) (Miss. Ct. App. 2002) (holding payment of taxes is but one incident to possession, though not dispositive).

¶18. Most crucial to the chancellor's findings on this element, however, were the 2006 and 2012 aerial photographs upon which Newman relied to locate O'Neal's road. Testimony offered on behalf of O'Neal maintained that the road was both easily visible (though, not from Highway 27) and large enough to "drive a car down it." It is undisputed that the summer 2012 aerial photograph clearly reveals the "mud pit" in the northeast corner of the Blalock property, the area of dispute. The aerial photograph taken during winter of 2006,

8

however, illustrates no such road or "mud pit." The chancellor found this conspicuous, as the 2006 photograph was of a higher-quality resolution and presented a clearer representation of the land due to less foliage. Though the chancellor did not find that the photographs equated to an entire absence of the road, he did find that the road was "not as obvious as represented, or something used to 'fly a flag' of ownership to one inspecting the property, and in particular the area of the 'borrow pit' [and] 'mud pit.'"

¶19. Reviewing this evidence in light of the deferential standard accorded a chancellor's findings, we cannot hold that the chancellor erred, as there was sufficient evidence to support the finding that O'Neal did not satisfy this element by clear and convincing evidence.

### 2. Actual or Hostile

¶20. "Possession is defined as effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *Roberts*, 118 So. 3d at 670 (¶10). "Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed." *Id.* (citing *Wicker v. Harvey*, 937 So. 2d 983, 993-94 (¶34) (Miss. Ct. App. 2006)). "[T]he adverse possessor . . . must present some proof that [his] occupation of the record owner's property was hostile, and that the record owner—aware of the adverse possessor's hostile occupation—took no action to prevent adverse possession." *Double J Farmlands Inc. v. Paradise Baptist Church*, 999 So. 2d 826, 829 (¶15) (Miss. 2008). "The adverse possessor must also possess the property without permission, because permission defeats any claim of adverse possession." *Roberts*, 118 So. 3d at 670 (¶10)

9

(citing *Apperson*, 950 So. 2d at 1118 (¶12)).

¶21.  In this case, to classify O'Neal's possession as "hostile" would require that he maintained control of a definite area "visible to the eye or perceptible to the senses." *See id.* To reiterate—as the chancellor did—the focus of our inquiry pertains to the areas in controversy, the "borrow pit" and the "mud pit."  Thus, only acts taken with respect to this disputed land, and any control affected visible to one's eye, are relevant.  With these principles in mind, the chancellor found that pin 7 was not open and obvious, as it was located in the bushes, and no photographs were introduced to rebut such a conclusion.  And while there was testimony regarding a deer stand allegedly built on the area in dispute, O'Neal's witnesses stated that the stand was not visible from Highway 27, and Newman testified to seeing mere remnants of the deer stand when he conducted his May 2013 survey. Again, however, the chancellor's findings under this element were based primarily upon the 2006 and 2012 aerial photographs, which showed that the "mud pit" had not come into being until *after* 2006.  As the original complaint in this matter was filed in December 2013, within the prescribed ten-year statutory period to claim adverse possession, we find sufficient evidence in the record to support the chancellor's holding that O'Neal did not satisfy the element of hostility by clear and convincing evidence.

### 3.  Open, Notorious, and Visible

¶22.  "In addition to the requirements that possession be under a claim of ownership and hostile, possession must also be open, notorious, and visible." *Roberts*, 118 So. 3d at 671 (¶13).  Therefore, the possessor "must unfurl his flag on the land, and keep it flying, so that

the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Id.* (quoting *Wicker*, 937 So. 2d at 994 (¶35)). "A claim of adverse possession cannot begin unless the landowner has actual or constructive knowledge that there is an adverse claim against his property." *Dean v. Slade*, 63 So. 3d 1230, 1237 (¶28) (Miss. Ct. App. 2010).

¶23. The chancellor found that the testimony presented in this case did not prove by clear and convincing evidence that O'Neal had unfurled his flag on the land, and kept if flying, such that Blalock would have actual or constructive knowledge of O'Neal's presence. Testimony varied with regard to whether the road or deer stand was clearly visible from Highway 27, and if so, whether the stand was located in the actual area of controversy. Furthermore, there was no evidence that any hunting or fishing took place on the disputed land, and again, whether such activity was observable from Highway 27. In addition, the formal entry from Highway 27 onto O'Neal's property was not located at pin 7, but rather at pin 6 (approximately 660 feet north of pin 7). Lastly, the chancellor found that "prior to Copiah Creek Camping and Recreation . . . , the controversial area was indistinguishable from the land on either side of the boundary, but for the road[.]" We agree with these findings, and hold that O'Neal did not prove this element by clear and convincing evidence.

### 4. Continuous and Uninterrupted for a Period of Ten Years

¶24. Mississippi Code Annotated section 15-1-13 requires continuous and uninterrupted possession of a disputed property for at least ten years. *See* Miss. Code Ann. § 15-1-13. "[O]ccasional use of someone else's property without an enclosure does not pass the test of

11

adverse possession. *Ellison v. Meek*, 820 So. 2d 730, 736 (¶21) (Miss. Ct. App. 2002). "Sporadic use of another's property does not constitute open and notorious possession." *Id.*

¶25.    O'Neal contends that he has continuously and uninterruptedly possessed the area of land in dispute since the alleged building of his road in 1990. We disagree. The record reveals that the "mud pit" did not come into existence until after 2006, following the creation of Copiah Creek Camping and Recreation, which invited "tremendous" amounts of ATV activity. Though ATV use in the "mud pit" area has been visible, continuous, and uninterrupted since 2006, it has not been present for the requisite ten years prescribed by statute. Moreover, no fence or entryway was erected in this area, and any activity that took place prior to 2006 was occasional at best. Thus, this element is not satisfied by clear and convincing evidence, and we find the chancellor had sufficient evidence to support this finding.

### 5.    Exclusive

¶26.    "Exclusive possession means that the possessor 'evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising [the] dominion of a sole owner.'" *Roberts*, 118 So. 3d at 671 (¶15) (quoting *Wicker*, 937 So. 2d at 995 (¶40)). "It does not mean that no one else can use the property." *Id.* "Exclusivity, within the meaning of the statute, means that the adverse possessor's use of the property was consistent with an exclusive claim to the right to use the property." *Id.* (citing *Moran v. Sims*, 873 So. 2d 1067, 1069 (¶10) (Miss. Ct. App. 2004)).

¶27. O'Neal presented a plethora of testimony regarding actions that he and his invitees took on his property as a whole; however, O'Neal failed to prove by clear and convincing evidence that he took exclusive actions on the area encompassing the "borrow pit" and "mud pit." As discussed above, the "mud pit" meets the exclusivity criteria, but only since 2006. Before the "mud pit," no such exclusive actions on the land in controversy were proven by clear and convincing evidence. Therefore, we agree with the chancellor's findings under this prong.

### 6. Peaceful

¶28. "An adverse possessor's use of a claimed property must be peaceful." *Scott,* 154 So. 3d at 915 (¶28); *see also* Miss. Code Ann. § 15-1-13. This Court has held that "expected disputes associated with the use or ownership of the property are not indicative of the possession not being peaceful." *Roberts*, 118 So. 3d at 671 (¶16). Here, the record does not reflect any dispute arising among the parties until the instant case was filed in 2013.

### CONCLUSION

¶29. The chancery court found that O'Neal failed to establish, by clear and convincing evidence, each element of his adverse-possession claim. Reviewing the record, we find that the chancellor had sufficient evidence to correctly apply the facts to the law and reach his conclusion. As such, we find the chancellor did not abuse his discretion and affirm.

¶30. **THE JUDGMENT OF THE COPIAH COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**