# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00321-COA

**R.D. COLLINS AND NANCY COLLINS**                    **APPELLANTS**

**v.**

**MOORE FAMILY TRUST 1999**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/01/2017 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JAMES CHARLES MARTIN |
| ATTORNEY FOR APPELLEE: | JOHN DENVER FIKE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 01/23/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND WESTBROOKS, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     R.D. and Nancy Collins (the Collinses) own land in Edwards, Mississippi, adjacent to land owned by the Moore Family Trust 1999 (the Moores).  The Moores claimed title to a .62-acre parcel of land through adverse possession, and the Hinds County Chancery Court, Second Judicial District, entered a judgment granting the Moores title of the disputed parcel.  On appeal, the Collinses argue the chancellor erred by finding the Moores satisfied their burden of proof for adverse possession.  Finding no error, we affirm the chancellor's judgment.

## FACTS

¶2.     As stated, the present dispute focuses on a .62-acre land parcel.  The Collinses claim ownership of the land pursuant to a deed, and the Moores claim ownership pursuant to adverse possession.  In 1911, the Moores purchased a tract of land adjacent to the contested parcel.  After several ownership transfers throughout the years, Hezekiah Moore placed his family's land into a trust in 1999.  The Collinses purchased their land, including the subject parcel, in 1984 from the estate of Howard Gorden.  Gorden was Nancy's great-grandfather, and he obtained his land, including the subject parcel, around the same time that the Moores purchased their tract.

¶3.     In 2015, the Collinses and Hezekiah obtained land surveys.  The Collinses obtained their survey in August 2015, and Hezekiah obtained his survey a few months later in December 2015.  Both surveys showed the contested parcel was within the Collinses' deed description.  However, the survey obtained by Hezekiah indicated the parcel might belong to the Moores by adverse possession.  On January 29, 2016, Hezekiah filed a complaint asserting ownership of the disputed parcel and argued that his family had adversely possessed the land since 1911.

¶4.     At a September 27, 2016 hearing, undisputed evidence showed a fence had existed on two of the three sides of the parcel since around 1911.  The fence's placement resulted in the parcel being fenced in along with the Moores' property.  However, both R.D. and Nancy testified that their predecessors had granted the Moores permission to use the land and that they had then extended this permission to the Moores after purchasing the land in 1984.

¶5.     Both R.D. and Hezekiah testified at the hearing that R.D. asked Hezekiah about the

fence placement after the Collinses purchased their land in 1984. However, the testimony differed as to the conversation's content and outcome. Hezekiah testified that he stated his grandfather and Nancy's great-grandfather had agreed on the property line and the fence's placement many years ago. According to Hezekiah, the fence's original placement predated his birth. However, he testified that his family's cattle had grazed on the land for as long as he could remember. He further stated that his family had allowed third parties to use the land for cattle grazing.

¶6.    As stated, in December 2015, Hezekiah obtained the survey of his family's land indicating that the disputed parcel might belong to the Moores through adverse possession. After receiving the survey, Hezekiah replaced the old fence on the parcel with a new one and placed "No Trespassing" signs on the land.

¶7.    R.D. testified that he and Nancy bought their land, including the disputed parcel, in 1984. R.D. stated that they had paid taxes on the parcel each year. After their land purchase, R.D. asked Hezekiah about the fence's placement on the parcel. R.D. testified that Hezekiah said the Gordens agreed to let the Moores build the fence in its present location. R.D. further testified that Hezekiah told him they should let the fence stay in its present location. R.D. stated he agreed to the fence's placement because he benefitted by not having the upkeep on the parcel. Like R.D., Nancy testified that she was aware of the Moores' permissive use of the parcel and that she had agreed to the continuation of the permissive use.

¶8.    According to the Collinses, they first learned the Moores were asserting an ownership claim over the parcel when they received service of the adverse-possession lawsuit. R.D.

3

testified that Hezekiah had never previously claimed ownership of the parcel or indicated the Moores considered the parcel to be theirs. R.D. further testified that he never told the Moores or third parties to stay off the land because he had agreed to the land being used for cattle grazing and bushhogging. R.D. also stated that he never cut growth around the fence, posted "No Trespassing" signs, or took any other action regarding the parcel because the Moores' use of the land was agreed upon.

¶9. The chancellor also heard testimony from Reggie Gordon, Leon Thurmond, and A.C. Peoples. Gordon worked on the Moores' property for Hezekiah's mother. Gordon testified a fence existed on two of the three sides of the parcel for as long as he could remember. He further stated that he had driven a four-wheeler around the parcel to check on the fence and had never been told to stay off the property. Although he had always thought the parcel belonged to the Moores, Gordon testified he knew nothing of the deed descriptions regarding the Collinses' and the Moores' property lines.

¶10. Thurmond bushhogged and tended cattle on the Moores' property, including the disputed parcel, from 1995 to 2006. Thurmond testified that the fence on two of the three sides of the parcel had existed during this time frame and that no one ever told him to stay off the parcel. Like Gordon, Thurmond testified he was unaware of the deed descriptions related to the property lines.

¶11. Finally, Peoples testified that, since 1995, he had tended other people's cattle and grazed his own cattle on the Moores' property. Peoples confirmed that a fence had existed on two of the three sides of the subject parcel during that time. Peoples further testified that

4

no one told him to stay off the parcel and that he had thought it belonged to the Moores. However, Peoples stated that he was not familiar with the deed descriptions related to the parcel's ownership.

¶12. On January 10, 2017, the chancellor entered a memorandum opinion and order on the Moores' adverse-possession claim. The chancellor found the Moores established all the elements required for adverse possession. On February 1, 2017, the chancellor entered a final judgment granting ownership of the parcel to the Moores by adverse possession. Aggrieved, the Collinses appeal.

## STANDARD OF REVIEW

¶13. We decline to disturb a chancellor's factual findings unless the findings were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. *Turnage v. Brooks*, 213 So. 3d 103, 105 (¶2) (Miss. Ct. App. 2016). "As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter." *Id.* (citing *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010)). However, we review de novo a chancellor's interpretation and application of the law. *O'Neal v. Blalock*, 220 So. 3d 234, 239 (¶10) (Miss. Ct. App. 2017).

## DISCUSSION

¶14. The Collinses claim the chancellor erred by finding the Moores satisfied their burden of proof for adverse possession. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) sets forth the following elements for adverse possession:

Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

Otherwise stated, any claimant asserting adverse possession must prove by clear and convincing evidence that his possession was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *O'Neal*, 220 So. 3d at 240 (¶13) (citation omitted).

### 1. Under Claim of Ownership

¶15. "To stake a claim of ownership, the possessor must fly his flag over the property in such a way as to put the actual owner on notice that the property is being held under an adverse claim of ownership. The quality, not the quantity, of acts must be considered." *Scott v. Anderson-Tully Co.*, 154 So. 3d 910, 916 (¶15) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted). "Possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land, and adverse possession of wild or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Apperson v. White*, 950 So. 2d 1113, 1117 (¶8) (Miss. Ct. App. 2007) (citation and internal quotation marks omitted).

¶16. Uncontested testimony presented at the hearing reflected that a fence had existed on two of the three sides of the disputed parcel since around the time the Moores bought their land in 1911. The fence's placement divided the parcel from the remaining property owned first by Gorden and then by the Collinses. As a result, the parcel was fenced in with the

6

Moores' property. Our caselaw recognizes, however, that "[t]he mere presence of a fence, without more, is not sufficient to sustain a claim of adverse possession." *Scott*, 154 So. 3d at 916 (¶15) (citation omitted).

¶17. In an attempt to provide further proof of his family's ownership claim over the disputed land, Hezekiah testified that his family had enjoyed unrestricted use of the property for as long as he could remember. According to Hezekiah, his family had always maintained the disputed area, including the fence. He stated that his family bushhogged and grazed cattle on the land and had allowed third parties to do the same. To corroborate his family's possessory actions, Hezekiah offered the testimony of Gordon, Thurmond, and Peoples. The three men testified that the fence had existed for well over ten years and that they had always believed the property belonged to the Moores. Gordon stated that he worked on the Moores' property for Hezekiah's mother and that he drove a four-wheeler on the parcel to check the status of the fence. Thurmond corroborated that he had bushhogged the area for the Moores and tended cattle on it. Finally, Peoples testified that he had also tended cattle on the parcel and that the Moores had allowed him to graze his own cattle there.

¶18. Based on the hearing testimony, the chancellor found the Moores established by clear and convincing evidence that they had used the parcel under a claim of ownership since 1911. Upon review, we find the record contains sufficient evidence to substantially support the chancellor's finding that the Moores staked an ownership claim to the property from 1911 to 2016.

## 2. Actual or Hostile

7

¶19. "Actual possession is effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *Niebanck v. Block*, 35 So. 3d 1260, 1265 (¶15) (Miss. Ct. App. 2010) (citation and internal quotation marks omitted). "Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed." *Scott*, 154 So. 3d at 916 (¶18) (quoting *Wicker v. Harvey*, 937 So. 2d 983, 994 (¶34) (Miss. Ct. App. 2006)). "The adverse possessor must present some proof that his occupation of the record owner's property was hostile, and that the record owner—aware of the adverse possessor's hostile occupation—took no action to prevent adverse possession." *O'Neal*, 220 So. 3d at 241 (¶20) (quoting *Double J Farmlands Inc. v. Paradise Baptist Church*, 999 So. 2d 826, 829 (¶15) (Miss. 2008)). Furthermore, "[t]he adverse possessor must . . . possess the property without permission, because permission defeats any claim of adverse possession." *Id.* (quoting *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 670 (¶10) (Miss. Ct. App. 2013)). "[P]ossession with the permission of the record owner can never ripen into adverse possession[] until there is a positive assertion of a right hostile to the record owner [that] is made known to him." *Stringer v. Robinson*, 760 So. 2d 6, 10 (¶20) (Miss. Ct. App. 1999) (citations omitted).

¶20. In the present case, the parties disagree about whether the Moores used the subject land with permission. After the Collinses purchased their property in 1984, R.D. asked Hezekiah about the fence placement on the parcel. Hezekiah testified he told R.D. that the Gordens and the Moores had agreed on both the property line and the fence's placement

8

around 1911. Based on their conversation, Hezekiah testified he believed that he had clearly indicated to R.D. that his (Hezekiah's) grandfather had fenced the land in and that the land belonged to the Moores.

¶21. Contrary to Hezekiah's assertions, the Collinses testified they remained unaware the Moores were asserting an ownership claim over the land until Hezekiah filed his adverse-possession lawsuit on January 29, 2016. R.D. testified that Hezekiah previously told him the Gordens agreed to let the Moores build the fence in its present location. R.D. further stated that Hezekiah had said they should leave the fence there. The Collinses testified that, like their predecessors, they granted the Moores permission to keep the fence in its present location and to use the land. The Collinses stated they benefitted from the arrangement since the Moores maintained the parcel and the fence line. In addition, the Collinses testified they never told anyone to get off the land because the Moores used the land as agreed for cattle grazing and bushhogging.

¶22. In granting the Moores' adverse-possession claim, the chancellor found the Moores had maintained and used the parcel for over one-hundred years without permission. Upon review, we find such evidence sufficient to prove the element of hostile use by clear and convincing evidence.

### 3. Open, Notorious, and Visible

¶23. With regard to this element, we have previously stated:

> In addition to the requirements that possession be under a claim of ownership and hostile, possession must also be open, notorious, and visible. Therefore, the possessor must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his

9

domains, and planted the standard of conquest. A claim of adverse possession cannot begin unless the landowner has actual or constructive knowledge that there is an adverse claim against his property.

*O'Neal*, 220 So. 3d at 242 (¶22) (internal citations and quotation marks omitted).

¶24. As previously discussed, the chancellor found the hearing evidence established that the Moores enjoyed unrestricted use of the parcel from 1911 to 2016. The chancellor found the evidence further established that the Moores farmed and raised cattle on the parcel and maintained both the fence and the fenced-in parcel. Thus, although the Moores failed to use the subject property on a daily basis, the chancellor held their regular use of the property for cattle grazing, farming, and bushhogging sufficed as open, notorious, and visible. We find substantial record evidence supports the chancellor's findings on this issue. We therefore find the Moores proved this element by clear and convincing evidence.

### 4. Continuous and Uninterrupted for a Period of Ten Years

¶25. Section 15-1-13 requires a claimant to exercise continuous and uninterrupted possession over the disputed property for at least ten years. "Occasional use of someone else's property without an enclosure does not pass the test of adverse possession. [Moreover, s]poradic use of another's property does not constitute open and notorious possession." *O'Neal*, 220 So. 3d at 242 (¶24) (internal citations and quotation marks omitted).

¶26. Although the parties disagree over whether the Collinses and their predecessors granted the Moores permission to use the parcel at issue, no dispute exists that the Moores did in fact use the parcel for a continuous and uninterrupted period of at least ten years. We therefore find substantial evidence supports the chancellor's conclusion that the Moores

10

proved this element by clear and convincing evidence.

### 5. Exclusive

¶27. "Exclusive possession means that the possessor evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising the dominion of a sole owner." *Id.* at 243 (¶26) (citation and internal quotation marks omitted). "Exclusive possession does not mean that no one else can use the property." *Scott*, 154 So. 3d at 918 (¶26) (citation and internal quotation marks omitted). "Exclusivity, within the meaning of the statute, means that the adverse possessor's use of the property was consistent with an exclusive claim to the right to use the property." *O'Neal*, 220 So. 3d at 243 (¶26) (citation omitted).

¶28. The record before us reflects no evidence to dispute the Moores' claim that only they, and those to whom they allowed access, used the parcel after the fence was built around 1911. As a result, we find the Moores met their evidentiary burden to prove exclusivity.

### 6. Peaceful

¶29. "An adverse possessor's use of a claimed property must be peaceful." *Scott*, 154 So. 3d at 918-19 (¶28) (citing Miss. Code Ann. § 15-1-13(1)). The record reflects no dispute over the subject property until Hezekiah filed the underlying adverse-possession lawsuit on January 29, 2016. We therefore find sufficient evidence to support the chancellor's determination that the Moores' possession of the parcel was peaceful. The chancellor's judgment finding that the Moores adversely possessed the land is affirmed.

11

¶30.     **AFFIRMED.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**